**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **THE VERACITY GROUP, INC.,** | : | **CASE NO. 1:11cv526** |
| **c/o Corporate Statutory Services, Inc.** | | |
| **255 East Fifth Street** | : | |
| **Cincinnati, Ohio 45202,** | | |
| | : | **COMPLAINT FOR INJUNCTIVE** |
| **and** | | **RELIEF AND FOR MONEY** |
| | : | **DAMAGES** |
| **JACK J. KENNAMER** | | |
| **6515 Clawfoot Court** | : | |
| **Maineville, Ohio 45039,** | | |
| | : | **JURY DEMANDED** |
| **and** | | |
| | : | |
| **CHRISTOPHER F. HAUCK** | | |
| **10641 Margate Terrace** | : | |
| **Cincinnati, Ohio 45241,** | | |
| | : | |
| **Plaintiffs,** | | |
| | : | |
| **v.** | | |
| | : | |
| **COOPER-ATKINS CORPORATION,** | | |
| **INC.,** | : | |
| **33 Reeds Gap Road** | | |
| **Middlefield, Connecticut 06455-0450,** | : | |
| | | |
| **Serve Also:** | : | |
| | : | |
| **COOPER-ATKINS CORPORATION,** | | |
| **INC.,** | : | |
| **11353 Reed Hartman Hwy, Suite 110,** | | |
| **Cincinnati, OH 45241** | : | |
| | | |
| **and** | : | |
| | | |
| **COOPER-ATKINS CORPORATION,** | : | |
| **INC.** | : | |
| **c/o Statutory Agent** | | |
| **33 Reeds Gap Road** | : | |
| **Middlefield, CT 06455-0450** | | |
| | : | |
| **Defendant.** | | |

For their Complaint against Defendant Cooper-Atkins Corporation, Inc. ("Cooper-Atkins"), Plaintiffs The Veracity Group, Inc. ("Veracity"), Jack J. Kennamer ("Kennamer") and Christopher F. Hauck ("Hauck") state and aver as follows:

## NATURE OF THE CASE

1.      Plaintiffs bring this action under the Lanham Act  and under Ohio statutory and common law seeking injunctive relief to stop a campaign by Defendants to spread false, malicious and misleading information about the quality and features of Plaintiffs' VersaTrak® and VersaFridge®, products against which Defendant competes, as well as damages for the injuries Defendants have already caused.  Plaintiffs also seek all money damages permitted under the Lanham Act and Ohio law.

2.      Specifically, Plaintiffs bring this action under 15 U.S.C. § 1125(a)(1), and as to Ohio law, the Ohio Deceptive Trade Practices Act and Ohio's common law prohibitions against unfair competition, defamation, commercial disparagement, and tortious interference with business relations, and respectfully request that this Court grant Plaintiffs the injunctive and monetary relief described below.

3.      This is also an action for Defendant's breach of two settlement agreements entered into between the individual Plaintiffs and the Defendant.  This Court has retained jurisdiction to enforce the terms of these agreements that arose out of prior litigation in this Court.

## PARTIES

4.      Veracity is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio.

5.      Kennamer is a citizen and resident of the State of Ohio.

6.      Hauck is a citizen and resident of the State of Ohio.

7.     Cooper-Atkins is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in Middlefield, Connecticut, and doing business in the State of Ohio.

## JURISDICTION AND VENUE

8.     Veracity brings this action under the laws of the United States and the laws of the State of Ohio.

9.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10.     This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

11.     The Court has supplemental jurisdiction over the state law tort and contract claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal question claims that they form part of the same case or controversy under Article III of the United States Constitution.

12.     The Court has venue over this action pursuant to 28 U.S.C. § 1391(b) because Cooper-Atkins maintains a local office within this judicial district.

13.     The Court also has jurisdiction and venue over this action having retained jurisdiction to enforce the terms of the Confidential Settlement Agreement and General Release by and between Cooper-Atkins and Kennamer (the "Kennamer Settlement Agreement").  A copy of the Kennamer Settlement Agreement is not attached because the terms are confidential, and it is in the possession of Cooper-Atkins.

## GENERAL ALLEGATIONS

14.     Cooper-Atkins is engaged in the business of designing, manufacturing, selling and distributing customized temperature instruments, such as digital thermometers and timers.

Cooper-Atkins' products are used in the healthcare, food-service, refrigeration and HVAC industries.

15.     Veracity is engaged in the business of designing, manufacturing, selling and distributing the next generation in wireless temperature monitoring.  Veracity offers the fastest, most intuitive, feature-rich user interface as a multi-frequency hardware platform.  Veracity sells its wireless temperature monitoring system under the VersaTrak® trademark.  In addition to its VersaTrak® system, Veracity also sells VersaFridge,® the state of the art in hospital grade refrigeration.

16.     Veracity developed its VersaTrak® system and VersaFridge® refrigeration equipment based on its independent research and development to meet the needs of its customers.

17.     The VersaTrak® system was independently developed by Veracity employees. The VersaFridge® system was created by a third party and developed by Veracity as part of its product line.

18.     In addition to its VersaTrak® system and VersaFridge® equipment, Veracity sells hardware manufactured by third party suppliers.  One of Veracity's third-party suppliers manufactures standard, off-the-shelf hardware that is identical to the hardware sold by Cooper-Atkins and is compatible with both Cooper-Atkins' Temp Trak® system and Veracity's VersaTrak® wireless monitoring system.

19.     Cooper-Atkins and Veracity are competitors in the wireless temperature monitoring market and supporting hardware market throughout the United States.

20.     The customers and prospective customers of Cooper-Atkins are also customers and prospective customers of Veracity's VersaTrak® system, Veracity's hardware to support the

wireless temperature monitoring system and Veracity's VersaFridge® refrigeration equipment. Those customers and prospective customers need not purchase a wireless monitoring system to the exclusion of another wireless monitoring system.  Likewise, customers of Cooper-Atkins may purchase hardware from Veracity to support their Temp Trak® system.  In fact, those customers and prospective customers are prospective customers of the VersaFridge® refrigeration equipment without acquisition of either Cooper-Atkins' Temp Trak® system or Veracity's VersaTrak® system or their supporting hardware.

21.    In response to the introduction of Veracity's innovative and advanced competitive products and its sourcing of identical hardware in the marketplace, Cooper-Atkins adopted a strategy of unfair trade practices, trade libel, false accusations and interference with customer relations with the intent to cause confusion to customers, to misrepresent the nature and quality of Veracity's goods and to drive Veracity out of the marketplace and/or cripple Veracity as a competitor through the use of illegal and prohibited means.

22.    Cooper-Atkins' initial response to the introduction of the VersaTrak® system was to falsely accuse the founders of Veracity with theft of Cooper-Atkins' trade secrets.

23.    In response to those pernicious incriminations, Veracity provided Cooper-Atkins with a detailed explanation of the platforms and tool sets used in the development of the VersaTrak® software.  Veracity explained that the development platforms and tool sets for the VersaTrak® system were entirely different from the platforms and tool sets used in the development of the Temp Trak® software.

24.    Despite Veracity's detailed explanation of its development of the VersaTrak® system, and in an effort to impede Veracity from purchasing, integrating and selling the identical hardware used by both Cooper-Atkins' Temp Trak® and Veracity's VersaTrak® systems,

Cooper-Atkins pressured Inovonics, the manufacturer and supplier of the identical hardware to Cooper-Atkins and Veracity, to cease selling hardware to Veracity.

25.     When Cooper-Atkins was unsuccessful in impeding Veracity's source of hardware from Inovonics, Cooper-Atkins resorted to assault on Veracity and Veracity's goods and services through other illegal and anti-competitive means.

26.     Veracity is informed and believes and thereon alleges that on March 1 and 2, 2010, Cooper-Atkins held a company-wide sales meeting in Dallas, Texas.  The meeting consisted of all company healthcare, food-service and industrial sales managers as well as Carol Wallace, Chief Executive Officer of Cooper-Atkins, and Michael Carpenter, Chief Marketing Officer of Cooper-Atkins.  During the meeting, management of Cooper-Atkins focused on Veracity and responding to Veracity's innovative, competitive products and identical hardware solution because management considered Veracity to be Cooper-Atkins' biggest risk in the wireless temperature monitoring market.

27.     At the sales meeting, management of Cooper-Atkins, including Carol Wallace and Michael Carpenter, developed a strategy intended to impede, impair, and damage Veracity. Specifically, management of Cooper-Atkins instructed its sales managers that they were to (i) inform customers that Veracity had "stolen Temp Trak® software" and created VersaTrak® based on the trade secrets of Cooper-Atkins (despite Veracity's prior response to such allegations and Cooper-Atkins' lack of any factual support for such accusations); (ii) inform customers that Cooper-Atkins was considering litigation against Veracity and that Veracity would soon be out of business; and (iii) warn customers to have no dealings with Veracity or suffer the consequences.  The events following that meeting corroborate that strategy.

28.     To further exacerbate the strategy of malicious misrepresentations to be made to customers, management of Cooper-Atkins also developed a strategy to threaten and intimidate Veracity's customers and potential customers in connection with Cooper-Atkins' false and misleading statements.   Cooper-Atkins instructed its sales managers to inform all existing customers that if the customer purchased hardware from Veracity and installed it onto their Temp Trak® system, Cooper-Atkins would void its warranties of the Temp Trak® system and no longer support the hardware or software purchased from Cooper-Atkins.   If the customer inquired about the consequences of purchasing hardware from Veracity, management of Cooper-Atkins instructed its sales managers to advise the customer that if they purchased hardware from Veracity and used that hardware with the Temp Trak® system, Cooper-Atkins would (i) no longer support their Temp Trak® system; (ii) void all existing warranties of the Temp Trak® system; (iii) refuse to honor any pre-existing support contract for the Temp Trak® system; and (iv) rescind the customer's license for the Temp Trak® software.

29.     Veracity is informed and believes and thereon alleges that in mid-June 2010, Philip Wertheiser, a vice-president of Cooper-Atkins, instructed employees of Cooper-Atkins to threaten a prospective Veracity customer, Memorial Health (Colorado), that if it purchased hardware from Veracity, Cooper-Atkins would void the warranties on its current Temp Trak® system.   In spite of this threat, Memorial Health elected to purchase hardware from Veracity to support its wireless temperature monitoring system.   After Memorial Health decided to purchase hardware from Veracity and install it with their Temp Trak® system, Cooper-Atkins directed its independent sales representative, Marcia Reynolds, to again threaten that if Memorial Health continued to purchase from Veracity, Cooper-Atkins would void the warranties and not support the Temp Trak® software at Memorial Health.

30.    In mid-April, 2010, employees of Cooper-Atkins falsely told a prospective Veracity customer, University of Illinois, that the VersaTrak® system had been pirated from Cooper-Atkins and developed using Cooper-Atkins' trade secrets.  Employees of Cooper-Atkins also informed the University of Illinois that Cooper-Atkins had pending litigation against Veracity and the success of that litigation would cause Veracity to go out of business.  Despite Veracity's assurances of originality and viability, the University of Illinois elected not to do business with Veracity as a direct and proximate result of Cooper-Atkins' representations.

31.    Upon learning that a former customer, the Beverly Hospital in Montebello, California, had purchased the VersaTrak® system and had initiated conversion to the VersaTrak® system, Cooper-Atkins interfered with Veracity's business relationship with Beverly Hospital.  Cooper-Atkins gave an upgraded system to Beverly Hospital and made statements to Beverly Hospital employees inducing the hospital to cut off its relationship with Veracity despite the hospital's quite recent purchase of a Veracity system and the hospital's existing premium service contract with Veracity.   The circumstances of Beverly Hospital's abrupt and unexplained behavior indicate that Cooper-Atkins' conduct involved deceit or confusion of the type contemplated in its general scheme to harm Veracity, and was not just competition in the normal course.  Cooper-Atkins acted maliciously to harm Veracity, using unfair competition to interfere with Veracity's business relationship with Beverly Hospital.  As a direct and proximate result of Cooper-Atkins' interference with the business relationship, Beverly Hospital terminated its business relationship with Veracity.

32.    Veracity is informed and believes and thereon alleges that as part of its campaign to slander the VersaTrak® system and Veracity and deceive customers and prospective customers of Veracity, employees and agents of Cooper-Atkins have maliciously represented to Veracity's

customers and prospective customers that Cooper-Atkins planned to sue Veracity and Veracity would be soon going out of business. This includes, without limitation, employees of Cooper-Atkins representing to a customer of Veracity, and to University of Illinois, a potential customer of Veracity, that Cooper-Atkins planned to sue Veracity and Veracity would soon be going out of business. As a direct and proximate result of these false and malicious representations, customers and potential customers of Veracity elected not to purchase or to postpone purchasing from Veracity.

33. Veracity is informed and believes and thereon alleges that as part of its campaign against Veracity and Veracity's goods and services, employees and agents of Cooper-Atkins have maliciously represented to prospective employees of Veracity that Cooper-Atkins had pending litigation against Veracity that, if successful, would put Veracity out of business. This includes, without limitation, a September 2010 representation made by Lee Hanan of Cooper-Atkins to Peter Savage, a prospective employee of Veracity, that Cooper-Atkins' pending lawsuit against Veracity would result in Veracity going out of business.

34. Veracity is informed and believes and thereon alleges that in September 2010, Cooper-Atkins held a group conference call with sales agents and independent sales representatives and maliciously misrepresented to these sales agents and independent sales representatives that Veracity was undercapitalized, understaffed and would not be in business for long. Veracity is informed and believes and thereon alleges that these sales agents and independent sales representatives of Cooper-Atkins subsequently repeated that same information to Veracity's customers and prospective customers with the intent to harm Veracity, to misrepresent the nature, characteristics and qualities of Veracity's goods and services, to libel Veracity and to interfere with Veracity's business relationships.

35.     Veracity is informed and believes and thereon alleges that in addition to Cooper-Atkins' false and misleading description of the VersaTrak® system as a pirated system created with Cooper-Atkins' trade secrets, its campaign to deceive and intimidate customers and prospective customers, and its pressure on suppliers to discontinue selling to Veracity, Cooper-Atkins engaged in a deliberate and malicious plan to disparage Veracity and its goods and services to customers and potential customers, including but not limited to University of Illinois, with false representations that, among other things, Veracity was undercapitalized and/or going out of business.

36.     Veracity had been contacted by the Prescott Veterans' Administration Hospital, in Prescott, Arizona on March 28, 2011.  Prescott contacted Veracity looking for an alternative to the Cooper-Atkins' Temp Trak® system.  Prescott expressed interest in obtaining a price quotation from Veracity for the VersaTrak® system to replace the Cooper-Atkins' Temp Trak® system.  Following receipt of his list of requirements, Veracity contacted Prescott to discuss the price quotation.  At that time, Prescott reported that it had recently spoken with a Cooper-Atkins employee about potential competitors.  Veracity is informed and believes and thereon alleges that the Cooper-Atkins employee informed Prescott that the founders of Veracity had worked at Cooper-Atkins and had stolen everything from Cooper-Atkins to create the VersaTrak® system.

37.     Exacerbating Cooper-Atkins' malicious campaign against Veracity, counsel for Cooper-Atkins deliberately misrepresented to Health Care Logistics, Inc. ("HCL"), the exclusive national distributor for Veracity, that Cooper-Atkins had obtained an injunction against David Duran, an employee of Veracity and a former employee of Cooper-Atkins.  Counsel for Cooper-Atkins cautioned HCL that notice of the injunction served to bind HCL to the terms and conditions of the temporary restraining order and would prevent HCL from facilitating or

encouraging Mr. Duran's violation of the same.   Counsel for Cooper-Atkins made this representation without reference to but knowing that the Superior Court in San Diego, California had already issued an injunction prohibiting Cooper-Atkins from enforcing the very same restrictions which Cooper-Atkins had sought to enforce.  As a direct and proximate result of this letter, HCL elected to terminate doing business with Veracity despite having prospective confirmed sales leads and quoted products in excess of $2 million.

38.     As a direct and proximate result of Cooper-Atkins' malicious strategy intended to deceive, mislead, slander and debilitate Veracity and its goods and services, Cooper-Atkins has depressed sales of Veracity's products, including but not limited to VersaFridge®, a product type not even offered by Cooper-Atkins.

### COUNT I

### (Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1))

39.     Veracity incorporates by reference each and every allegation set forth in paragraphs 1 through 38 of its Complaint.

40.     Cooper-Atkins has engaged in a deliberate and malicious sales campaign designed to compete unfairly with Veracity.   As part of its trade practices, Cooper-Atkins' officers, directors, employees and agents have made false or misleading descriptions of fact in commercial promotions which misrepresent the nature, characteristics and qualities of Veracity's goods and services.  Such false or deceptive promotions are unfair trade practices in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

41.     At the March 1 and 2, 2010 sales meeting in Dallas, Texas, management of Cooper-Atkins developed a strategy intended to combat competition from Veracity.  Instead of developing a plan and strategy based on fair competition, management of Cooper-Atkins developed a plan and strategy to engage in unfair competition and deception.   Veracity is

informed and believes and thereon alleges that at the sales meeting, management of Cooper-Atkins instructed its sales managers that they were to (i) inform customers that Veracity had "stolen Temp Trak® software" and created VersaTrak® based on the trade secrets of Cooper-Atkins (despite Veracity's prior response to such allegations and Cooper-Atkins' lack of any factual support for such accusations); (ii) inform customers that Cooper-Atkins was considering litigation against Veracity, or that litigation was already pending, and that Veracity and its principals would soon be put out of business; and (iii) warn customers to have no dealings with Veracity or suffer the consequences.  On information and belief, Cooper-Atkins' sales managers followed Cooper-Atkins' instructions and caused these false and misleading statements, possibly among others, to be made in connection with goods and services, in a way that is likely to cause confusion, and in commercial advertising or promotion.

42.    For example and without limitation, Veracity is informed and believes and thereon alleges that in mid-April, 2010, employees of Cooper-Atkins advised a prospective Veracity customer, University of Illinois, that the VersaTrak® system had been pirated from Cooper-Atkins and developed using Cooper-Atkins' trade secrets.  Employees of Cooper-Atkins also informed the University of Illinois that Cooper-Atkins had pending litigation against Veracity and the success of that litigation would cause Veracity to go out of business.  Despite Veracity's assurances of originality and viability, the University of Illinois elected not to do business with Veracity as a direct and proximate result of Cooper-Atkins' representations.

43.    Veracity is informed and believes and thereon alleges that as part of its campaign to slander the VersaTrak® system and Veracity and deceive and confuse customers and prospective customers of Veracity, employees and agents of Cooper-Atkins have maliciously represented to Veracity's customers and prospective customers that Cooper-Atkins planned to

sue Veracity and that Veracity would be soon going out of business.  For example, employees of Cooper-Atkins represented to customers of Veracity in the medical care business and University of Illinois, potential customers of Veracity, that Cooper-Atkins sued Veracity and Veracity would soon be going out of business.  As a direct and proximate result of these false and malicious representations, customers and potential customers of Veracity elected not to purchase or to postpone purchasing from Veracity.

44.    Veracity is informed and believes and thereon alleges that in September 2010, Cooper-Atkins held a group conference call with sales agents and independent sales representatives and maliciously misrepresented to these sales agents and independent sales representatives that Veracity was undercapitalized, understaffed and would not be in business for long.  Veracity is informed and believes and thereon alleges that Cooper-Atkins thus caused these sales agents and independent sales representatives of Cooper-Atkins to subsequently repeat that same information to Veracity's customers and prospective customers with the intent to harm Veracity, to misrepresent the nature, characteristics and qualities of Veracity's goods and services, to libel Veracity, to deceive and confuse Veracity's customers and prospective customers, and to interfere with Veracity's business relationships.

45.    Cooper-Atkins' false statements about Veracity and its products in Cooper-Atkins' promotions were false or misleading descriptions and representations of fact and were disseminated to customers or potential customers of Veracity in interstate commerce in connection with goods and services with the intent to deceive and confuse those customers and potential customers as to the nature, characteristics and qualities of Veracity's goods, services and commercial activities.  Such false statements were likely to confuse Veracity's customers

and potential customers as to affiliation, connection or origin of Veracity's goods, services and commercial activities.

46.     Cooper-Atkins' false statements about Veracity's goods and services actually deceived and confused, or had a tendency to deceive and confuse, Veracity's customers and potential customers to whom Cooper-Atkins made the false and misleading statements.

47.     Cooper-Atkins' false and misleading statements about Veracity's goods, services and commercial activities were introduced into interstate commerce, and were material in that they intended to influence, and would likely influence, the purchasing decisions of Veracity's customers or potential customers within this District and throughout the United States, resulting in customers ceasing to do business with Veracity and potential customers electing not to do business with Veracity and, upon information and belief, a substantial increase in business and profits for Cooper-Atkins.

48.     Unless Cooper-Atkins' unfair trade practices are restrained by this Court, Veracity will be irreparably harmed and will have no adequate remedy at law.

49.     As a direct and proximate result of Cooper-Atkins' unfair trade practices, Veracity has suffered, and will continue to suffer, damages and lost profits in an amount in excess of $250,000.00.  Accordingly, Cooper-Atkins is entitled to an award of actual damages, Cooper-Atkins' profits, and the costs of the action.

50.     Veracity is also informed and believes and thereon alleges that Cooper-Atkins performed the foregoing acts, conduct and omissions intentionally, maliciously and oppressively, with the intent and design to damage Veracity through unfair competition.  By reason of Cooper-Atkins' conduct, Veracity is entitled to damages in an amount three times greater than actual damages pursuant to the Lanham Act, 15 U.S.C. § 1117(a).  Moreover, this is an exceptional

case and Veracity will be entitled to reasonable attorneys' fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT II

### (Violation of the Ohio Deceptive Trade Practices Act)

51.     Veracity incorporates by reference each and every allegation set forth in paragraphs 1 through 50 of its Complaint.

52.     Cooper-Atkins' activities as described herein constitute deceptive trade practices or acts with the meaning of the Ohio Deceptive Trade Practices Act, codified at Ohio Revised Code § 4165.02.

53.     Cooper-Atkins' conduct is and has been deliberate, intentional, and willful and Cooper-Atkins has acted with full knowledge of the deceptiveness of its actions.

54.     Veracity has been injured as a result of Cooper-Atkins' unlawful and unauthorized deceptive trade practices by lost sales, lost and damaged business relationships, and lessening of the goodwill that Veracity's products and services have with its customers and prospective customers.

55.     As a result of Cooper-Atkins' unlawful and unauthorized deceptive trade practices, Cooper-Atkins has caused and will continue to cause substantial and irreparable harm to Veracity for which there is no adequate remedy at law.  Cooper-Atkins has unjustifiably benefitted from said unlawful acts and will continue to carry out such unlawful conduct and be unjustly enriched unless enjoined by this Court.

56.     Pursuant to Ohio Revised Code § 4165.03, this Court should enjoin Cooper-Atkins' unlawful conduct, and award actual damages and reasonable attorneys' fees in Plaintiffs' favor.

## COUNT III

### (Unfair Competition, Ohio Common Law)

57.     Veracity incorporates by reference each and every allegation set forth in paragraphs 1 through 56 of its Complaint.

58.     Cooper-Atkins' activities as described herein constitute unfair competition under the common law of the  State of Ohio.

59.     Cooper-Atkins' conduct is and has been deliberate, intentional, willful and has been undertaken with the purpose of deceiving Veracity's customers and potential customers. Cooper-Atkins has acted with full knowledge of the deceptiveness of their actions.

60.     Cooper-Atkins' false statements about VersaTrak$^{®}$ are likely to cause confusion, mistake, or deception about the quality and features and origins of the VersaTrak$^{®}$ products.

61.     Veracity has been injured as a result of Cooper-Atkins' unfair competition in that Veracity has lost sales as a result thereof and/or by lessening of the goodwill that Veracity's products and services have with customers, potential customers, and in the market generally.

## COUNT IV

### (Tortious Interference with Business Relations)

62.     Veracity incorporates by reference each and every allegation set forth in paragraphs 1 through 61 of its Complaint.

63.     Veracity had economic relationships with the customers and prospective customers as described above, with both actual economic benefit and the probability of future economic benefit to Veracity.

64.     Cooper-Atkins knew of the relationships that Veracity had with its customers and prospective customers.

65.     Veracity is informed and believes and thereon alleges that in mid-April, 2010, employees of Cooper-Atkins advised a prospective Veracity customer, University of Illinois, that the VersaTrak® system had been pirated from Cooper-Atkins and developed using Cooper-Atkins' trade secrets.  Employees of Cooper-Atkins also informed the University of Illinois that Cooper-Atkins had pending litigation against Veracity and the success of that litigation would cause Veracity to go out of business.  Despite Veracity's assurances of originality and viability, the University of Illinois elected not to do business with Veracity as a direct and proximate result of Cooper-Atkins' representations.

66.     Upon learning that a former customer, the Beverly Hospital in Montebello, California, had purchased the VersaTrak® system and had initiated conversion to the VersaTrak® system, Cooper-Atkins interfered with Veracity's business relationship with Beverly Hospital.  Cooper-Atkins gave an upgraded system to Beverly Hospital and made statements to Beverly Hospital employees inducing the hospital to cut off its relationship with Veracity despite the hospital's quite recent purchase of a Veracity system and the hospital's existing premium service contract with Veracity.   The circumstances of Beverly Hospital's abrupt and unexplained behavior indicate that Cooper-Atkins' conduct involved deceit or confusion of the type contemplated in its general scheme to harm Veracity, and was not just competition in the normal course.  Cooper-Atkins acted maliciously to harm Veracity, using unfair competition to interfere with Veracity's business relationship with Beverly Hospital.  As a direct and proximate result of Cooper-Atkins' interference with the business relationship, Beverly Hospital terminated its business relationship with Veracity.

67.     Veracity is informed and believes and thereon alleges that as part of Cooper-Atkins' campaign to slander the VersaTrak® system and Veracity and deceive customers and

prospective customers of Veracity, employees and agents of Cooper-Atkins have maliciously represented to Veracity's customers and prospective customers that Cooper-Atkins had sued or was planning to sue Veracity and that Veracity would be soon going out of business.  As a direct and proximate result of these false and malicious representations, customers and potential customers of Veracity elected not to purchase or to postpone purchasing from Veracity.

68.     Veracity is informed and believes and thereon alleges that in September 2010, Cooper-Atkins held a group conference call with sales agents and independent sales representatives and maliciously misrepresented to these sales agents and independent sales representatives that Veracity was undercapitalized, understaffed and would not be in business for long.  Veracity is informed and believes and thereon alleges that Cooper-Atkins thus caused its sales agents and independent sales representatives to subsequently repeat that same false information to Veracity's customers and prospective customers with the intent to harm Veracity, to misrepresent the nature, characteristics and qualities of Veracity's goods and services, to libel Veracity, to deceive and confuse Veracity's customers and prospective customers, and to interfere with Veracity's business relationships.

69.     For example and without limitation, Veracity is informed and believes and thereon alleges that Veracity had been contacted by the Prescott Veterans' Administration Hospital, in Prescott, Arizona on March 28, 2011.  Prescott contacted Veracity looking for an alternative to the Cooper-Atkins' Temp Trak® system.  Prescott expressed interest in obtaining a price quotation from Veracity for the VersaTrak® system to replace the Cooper-Atkins Temp Trak® system.  Following receipt of his list of requirements, Veracity contacted Prescott to discuss the price quotation.  At that time, Prescott reported that it had recently spoken with Cooper-Atkins about potential competitors.  The Cooper-Atkins employee informed Prescott that

the founders of Veracity had worked at Cooper-Atkins and had stolen everything from Cooper-Atkins to create the VersaTrak® system.

70.     As described above, Cooper-Atkins intentionally and willfully interfered with Veracity's economic relationships with its customers and prospective customers, and intentionally induced the termination of these relationships, through misrepresentations.

71.     In addition, Cooper-Atkins has intentionally interfered with and thwarted prospective customers from entering into business relationships with Veracity.

72.     Cooper-Atkins' interference is not privileged or justified, and has proximately caused damage to Veracity.

73.     As a direct and proximate result of Cooper-Atkins' improper conduct, Veracity has suffered damages and lost profits in an amount in excess of $250,000.00.

74.     Veracity is also informed and believes and thereon alleges that Cooper-Atkins performed the foregoing acts, conduct and omissions intentionally, maliciously and oppressively, with the intent and design to damage Veracity.  By reason of Cooper-Atkins' conduct, Veracity is entitled to recover punitive damages in excess of $1,000,000.00.

## COUNT V

**(Negligent Interference with Contract and Other Economic Relationships)**

75.     Veracity incorporates by reference each and every allegation set forth in paragraphs 1 through 74 of its Complaint.

76.     Veracity had economic relationships with its customers and prospective customers, with the probability of future economic benefit to Veracity.

77.     Cooper-Atkins knew of the relationships which Veracity had with the customers and prospective customers as described above.

19

78.     As described above, Cooper-Atkins negligently interfered with Veracity's economic relationships with its customers and prospective customers.

79.     As a direct and proximate result of Cooper-Atkins' improper conduct, Veracity has suffered damages and lost profits in excess of $250,000.00.

**COUNT VI**

**(Commercial Disparagement – Trade Libel)**

80.     Veracity incorporates by reference each and every allegation set forth in paragraphs 1 through 79 of its Complaint.

81.     Veracity is informed and believes and thereon alleges that Cooper-Atkins has made false, malicious and unprivileged representations to Veracity's customers and prospective customers that Veracity's VersaTrak® system had been stolen from Cooper-Atkins, had been pirated using Cooper-Atkins' trade secrets and otherwise maligned Veracity and its products and services. Cooper-Atkins knew these representations were false or acted in reckless disregard for the truth. Cooper-Atkins intended for these representations to cause pecuniary loss to Veracity.

82.     For example and without limitation, Veracity is informed and believes and thereon alleges that in mid-April, 2010, employees of Cooper-Atkins advised a prospective Veracity customer, University of Illinois, that the VersaTrak® system had been pirated from Cooper-Atkins and developed using Cooper-Atkins' trade secrets. Employees of Cooper-Atkins also informed the University of Illinois that Cooper-Atkins had pending litigation against Veracity and the success of that litigation would cause Veracity to go out of business. Despite Veracity's assurances of originality and viability, the University of Illinois elected not to do business with Veracity as a direct and proximate result of Cooper-Atkins' representations.

83.     Veracity is informed and believes and thereon alleges that in September 2010, Cooper-Atkins held a group conference call with sales agents and independent sales

representatives and maliciously misrepresented to these sales agents and independent sales representatives that Veracity was undercapitalized, understaffed and would not be in business for long.  Veracity is informed and believes and thereon alleges that Cooper-Atkins thus caused its sales agents and independent sales representatives subsequent to repeat that same information to Veracity's customers and prospective customers with the intent to harm Veracity, to misrepresent the nature, characteristics and qualities of Veracity's goods and services, to deceive and confuse Veracity's customers and prospective customers, and to interfere with Veracity's business relationships.

84.     For another example and without limitation, Veracity is informed and believes and thereon alleges that Veracity had been contacted by the Prescott Veterans' Administration Hospital, in Prescott, Arizona on March 28, 2011.  Prescott contacted Veracity looking for an alternative to the Cooper-Atkins' Temp Trak® system.  Prescott expressed interest in obtaining a price quotation from Veracity for the VersaTrak® system to replace the Cooper-Atkins' Temp Trak® system.  Following receipt of his list of requirements, Veracity contacted Prescott to discuss the price quotation.  At that time, Prescott reported that it had recently spoken with Cooper-Atkins about potential competitors.  The Cooper-Atkins employee informed Prescott that the founders of Veracity had worked at Cooper-Atkins and had stolen everything from Cooper-Atkins to create the VersaTrak® system.

85.     Veracity is informed and believes and thereon alleges that Cooper-Atkins has intentionally and maliciously disparaged Veracity's VersaTrak® and VersaFridge® systems to Veracity's customers and potential customers as described above and possibly in other ways, with the intent to cause pecuniary damage to Veracity and to disparage its goods and services.

86.     Veracity is informed and believes and thereon alleges that in addition to its slander of the VersaTrak® system as a pirated system and as being created using Cooper-Atkins' trade secrets, Cooper-Atkins made deliberate and malicious representations intended to disparage Veracity to customers and potential customers, including without limitation University of Illinois and Prescott Veterans' Administration Hospital, with false representations that Veracity was undercapitalized and/or going out of business.

87.     As a direct and proximate result of the intentional disparagement of Veracity's VersaTrak® system and VersaFridge® equipment and associated services, customers and potential customers of Veracity have elected not to purchase those goods and services, and Veracity's goodwill with customers and potential customers has been lessened.

88.     Unless Cooper-Atkins' libelous statements are restrained by this Court, Veracity will suffer irreparable injury for which it has no adequate remedy at law.

89.     As a direct and proximate result of this trade libel by Cooper-Atkins, Veracity has suffered damages and lost profits in an amount in excess of $250,000.00.

90.     Veracity is also informed and believes and thereon alleges that Cooper-Atkins performed the foregoing acts, conduct and omissions intentionally, maliciously and oppressively, with the intent and design to damage Veracity.  By reason of Cooper-Atkins' conduct, Veracity is entitled to recover punitive damages in excess of $1,000,000.00.

## COUNT VII

**(Defamation)**

91.     Veracity incorporates by reference each and every allegation set forth in paragraphs 1 through 90 of its Complaint.

92.     Veracity is informed and believes and thereon alleges that Cooper-Atkins has made false, malicious and unprivileged oral representations to Veracity's customers and

Case: 1:11-cv-00526-TSB-SKB Doc #: 1 Filed: 08/05/11 Page: 23 of 26  PAGEID #: 23


prospective customers that Veracity's VersaTrak® system had been stolen from Cooper-Atkins and otherwise maligned Veracity and its products and services.

93.    For example and without limitation, Veracity is informed and believes and thereon alleges that in mid-April, 2010, employees of Cooper-Atkins advised a prospective Veracity customer, University of Illinois, that the VersaTrak® system had been pirated from Cooper-Atkins and developed using Cooper-Atkins' trade secrets.  Employees of Cooper-Atkins also informed the University of Illinois that Cooper-Atkins had pending litigation against Veracity and the success of that litigation would cause Veracity to go out of business.  Despite Veracity's assurances of originality and viability, the University of Illinois elected not to do business with Veracity as a direct and proximate result of Cooper-Atkins' representations.

94.    For another example and without limitation, Veracity is informed and believes and thereon alleges that Veracity had been contacted by an employee of the Prescott Veterans' Administration Hospital, in Prescott, Arizona on March 28, 2011.  Prescott contacted Veracity looking for an alternative to the Cooper-Atkins' Temp Trak® system.  Prescott expressed interest in obtaining a price quotation from Veracity for the VersaTrak® system to replace the Cooper-Atkins' Temp Trak® system.  Following receipt of his list of requirements, Veracity contacted Prescott to discuss the price quotation.  At that time, Prescott reported that it had recently spoken with Cooper-Atkins about potential competitors.  The Cooper-Atkins employee informed Prescott that the founders of Veracity had worked at Cooper-Atkins and had stolen everything from Cooper-Atkins to create the VersaTrak® system.

95.    As a direct and proximate result of these false and malicious representations, Veracity has suffered damages and lost profits in excess of $250,000.00.

96.     Veracity is also informed and believes and thereon alleges that Cooper-Atkins performed the foregoing acts, conduct and omissions intentionally, maliciously and oppressively, with the intent and design to damage Veracity.  By reason of Cooper-Atkins' conduct, Veracity is entitled to recover punitive damages in excess of $1,000,000.00.

## COUNT VII

### (Breach of Kennamer Settlement Agreement)

97.     Kennamer and Cooper-Atkins entered into the Kennamer Settlement Agreement.

98.     Pursuant to the express terms of the Kennamer Settlement Agreement, Cooper-Atkins covenanted and agreed:

> Cooper-Atkins agrees that Gary Sawicki, COO; Barry Potter, V.P. Finance; Carol DuPlessis, V.P. HR, Mike Carpenter, CMO; and Carol Wallace, CEO will not make any false, misleading or negative statements, either orally or in writing about Mr. Kennamer; provided that Cooper-Atkins and such individuals shall respond accurately and fully to any questions, inquiries or requests for information when required by legal process.

99.     Kennamer is informed and believes and thereon alleges that Cooper-Atkins breached the Kennamer Settlement Agreement because Mike Carpenter and Carol Wallace have made false, misleading and negative statements about Kennamer, in particular, stating that he participated in the creation of the VersaTrak® system by stealing Cooper-Atkins' trade secrets and proprietary information.

100.    As a direct and proximate result of these disparaging statements, Kennamer has been damaged in an amount in excess of $100,000.00.

## COUNT VIII

### (Breach of Hauck Settlement Agreement)

101.    On August 31, 2009, Hauck and Cooper-Atkins entered into a Confidential Settlement Agreement and General Release (the "Hauck Settlement Agreement").  A copy of the

Hauck Settlement Agreement is not attached because its terms are confidential and Cooper-Atkins is in possession of the agreement.

102.     Pursuant to the express terms of the Hauck Settlement Agreement, Cooper-Atkins covenanted and agreed:

> Cooper-Atkins agrees that Gary Sawicki, COO; Barry Potter, V.P. Finance; Carol DuPlessis, V.P. HR, Mike Carpenter, CMO; and Carol Wallace, CEO will not make any false, misleading or negative statements, either orally or in writing about Mr. Hauck; provided that Cooper-Atkins and such individuals shall respond accurately and fully to any questions, inquiries or requests for information when required by legal process.

103.     Hauck is informed and believes and thereon alleges that Cooper-Atkins breached the Hauck Settlement Agreement because Mike Carpenter and Carol Wallace have made false, misleading and negative statements about Hauck, in particular, stating that he participated in the creation of the VersaTrak® system by stealing Cooper-Atkins' trade secrets and proprietary information.

104.     As a direct and proximate result of these disparaging statements, Hauck has been damaged in an amount in excess of $100,000.00.

WHEREFORE, Veracity, Kennamer and Hauck request the Court enter judgment against Cooper-Atkins as follows:

(1)     preliminarily and permanently enjoining and restraining Cooper-Atkins from making any false representations or characterizations of Veracity's goods, services and commercial activities;

(2)     awarding Veracity its compensatory damages;

(3)     awarding Kennamer his compensatory damages;

(4)     awarding Hauck his compensatory damages;

(5)     awarding Veracity treble damages and Cooper-Atkins' profits for violations of the Lanham Act;

(6)    awarding Veracity its costs and attorneys' fees;

(7)    awarding Veracity punitive damages; and

(8)    awarding Veracity such other legal and equitable relief to which it is entitled.


/s/ Michael L. Scheier_____

Michael L. Scheier (0055512)
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6400
Fax: (513) 579-6457
mscheier@kmklaw.com

Attorney for Plaintiffs


## JURY DEMAND

Veracity demands trial by jury on all matters to which it is entitled.


/s/ Michael L. Scheier_____

Michael L. Scheier


4015218.1

26