UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE VERACITY GROUP, INC., *et al.*, | : | Case No. 1:11-cv-526 |
| | : | |
| Plaintiffs, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COOPER-ATKINS CORPORATION, INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT DEFENDANT'S MOTION TO DISMISS (Doc. 10) IS GRANTED IN PART AND DENIED IN PART**

This civil action is currently before the Court on Defendant's motion to dismiss

(Doc. 10) and the parties' responsive memoranda (Docs. 13, 17).[1]

### I. BACKGROUND FACTS

Defendant alleges that Plaintiffs' Complaint should be dismissed pursuant to Fed.

R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiffs[2] maintain causes of action for:

(1) Violation of the Lanham Act (Count I); (2) Violation of the Ohio Deceptive Trade

Practices Act (Count II); (3) Unfair Competition (Count III); (4) Tortious Interference

---

[1] Defendant request oral argument on this motion. (Doc. 17). The Court finds, however, that the pleadings are clear on their face and that oral argument is not necessary. *See* Local Rule 7.1(b)(2): "oral argument [will be granted] where deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented." *See also Whitescarver v. Sabin Robbins Paper Co.*, Case No. C-1-03-911, 2006 U.S. Dist. LEXIS 51524, at *7 (S.D. Ohio July 27, 2006) (C.J. Dlott) ("Local Rule 7.1(b)(2) leaves the Court with discretion whether to grant a request for oral argument.").

[2] Plaintiffs include Veracity Group, Inc. (a company engaged in the business of designing, manufacturing, selling, and distributing the next generation in wireless temperature monitoring), Jack Kennamer (President at Veracity), and Christopher Hauck (Chief Technology Officer at Veracity).

with Business Relations (Count IV); (5) Negligent Interference with Contract and Other Economic Relationships (Count V); (6) Commercial Disparagement - Trade Libel (Count VI); (7) Defamation (Count VII); (8) Breach of Kennamer Settlement Agreement (Count VII)[3]; and (9) Breach of Hauck Settlement Agreement (Count VIII).

## I. FACTS ALLEGED BY THE PLAINTIFFS

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to the Plaintiffs and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009). Plaintiffs allege as follows:

Defendant Cooper-Atkins' management orchestrated and carried out a large-scale scheme of unfair competition based on deception, confusion, and threats. (*See, e.g.*, Doc. 1 at ¶¶ 1, 21, 25, 26-28, 31, 34-35, 40-41, 70-72, 87). Plaintiffs allege lost relationships and business as a result of Defendant's scheme. (*See, e.g.*, *id.* at ¶¶ 30-31, 36-37).

Specifically, Plaintiffs claim that Defendant's management used a company-wide sales meeting on March 1-2, 2010, and a group conference call with sales agents and representatives in September 2010, to coordinate the scheme. (Doc. 1 at ¶¶ 26-27, 34). Plaintiffs maintain that at the March sales meeting, Defendant's executives instructed its foot soldiers to go on the offensive against Plaintiff Veracity through the use of

---

[3] The Complaint improperly labels two separate claims as Count VII.

falsehoods and threats. Defendant's plan, hatched at that meeting and spread over the marketplace in a wide-ranging enterprise of unfair competition and tortious interference, unfolded over time and was intended to rid the market of competitive products and competition.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a plaintiff's obligation to provide the grounds of [his] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as

-3-

a factual allegation." *Id.*

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949, 1950 (citing *Twombly*, 550 U.S. at 556, 570). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556).

### III.     ANALYSIS

Traditionally, courts have held that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is viewed with disfavor and is rarely granted. *Nuchols v. Berrong,* 141 Fed. Appx. 451, 453 (6th Cir. 2005).

#### A.     Time-Barred

First, Defendant alleges that Plaintiffs' claims should be dismissed because they are time-barred. Ohio statutes of limitations are to be given "a liberal construction to permit the deciding of cases upon their merits." *Rahm v. Hemsoth*, 372 N.E.2d 358, 359 (Ohio Ct. App. 1976). "The liberal construction of a statute requires that every reasonable presumption will be indulged and every doubt will be resolved in favor of affording rather than denying a plaintiff his day in court." *Id.*

##### *1.     Statute of Limitations under the Lanham Act and ODTPA (Counts I and II)*

The statute of limitations for a violation of the Ohio Deceptive Trade Practices Act

("ODTPA") depends on the nature of the action.[4] *Local 219 Plumbing & Pipefitting Indus. Pension Fund v. Buck Consultants, LLC*, 311 Fed. Appx. 827, 828-829 (6th Cir. 2009). The Lanham Act does not include a statute of limitations. *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir. 1985). Consequently, courts have applied the equitable doctrine of laches[5] to determine whether a Lanham Act claim may be barred on the basis of a delay in filing. *Id.* The starting point of the laches analysis is the analogous statute of limitations of the forum state – which is a claim of false advertising in Ohio. Therefore, a two-year limitations period (Ohio Rev. Code § 2305.10) applies. *Logan Farms. v. HBH, Inc.*, 282 F.Supp.2d 776, 790 (S.D. Ohio 2003). If the lawsuit was filed before the analogous statute of limitations lapsed, there is a strong presumption that the delay in filing was reasonable. *Tandy*, 769 F.2d at 366.

With respect to the laches defense, the laches period does not begin until a plaintiff can be charged with notice of the claim. *Laukus v. Rio Brands, Inc.*, 391 Fed. App'x 416, 421 (6th Cir. 2010) ("The period of delay begins to run when plaintiff had actual or constructive knowledge of the alleged infringing activity."). Plaintiffs maintain that they did not have instantaneous notice of the private meetings in March 2010 and subsequent conference call in September 2010 that Defendant used to carry out its scheme.

---

[4] Federal courts applying Ohio law have held that the analysis of a claim brought under the ODTPA is the same as that of a claim brought under the Lanham Act, and because the Ohio common law of unfair competition is not substantially dissimilar. *Hassell v. Chrysler Corp.*, 982 F.Supp. 515, 526 (S.D. Ohio 1997).

[5] The "negligent and unintentional failure to protect one's rights." *Tandy Corp*, 769 F.2d at 365.

-5-

Nonetheless, Plaintiffs filed this civil action in August 2011, well within the two-year period. Accordingly, these claims are not time-barred.

### 2. *Statute of Limitations for Common Law Unfair Competition and Tortious Interference Claims (Counts II, IV and V)*

Plaintiffs maintain that a four-year statute of limitations applies to its claims of tortious interference and unfair competition. *Sommer v. Dayton*, 556 F.Supp. 427, 434 (S.D. Ohio 1982) (tortious interference); *A. Stucki Co. v. Buckeye Steel Castings Co.*, 795 F. Supp. 847, 856 (S.D. Ohio 1991) (unfair competition). In *Lasmer Indus., Inc. v. AM Gen.*, 741 F.Supp. 2d 829, 836 (S.D. Ohio 2010), the plaintiff alleged tortious interference based on the defendant's false statement to the government that resulted in plaintiff being barred from government contracts. For the tortious interference claim, the court applied Ohio's "four-year statue of limitations for tort actions not specifically covered by other sections of the Code."[6] *Id*.

Defendant argues that Plaintiffs grounded their tortious interference claims on allegations that the alleged statements were false and defamatory and therefore the one-year statute of limitations should apply. However, "[t]he fact that the alleged interference took the form of a false representation is not sufficient to convert that claim into a fraud claim; the alleged false representation was simply the means used to achieve the interference."

---

[6] Ohio Revised Code § 2305.09(D) sets out a four-year statute of limitations for tort actions not specifically covered by other sections of the Code. Ohio courts have found that this section applies to claims of tortious interference with business relationships. *Morrow v. Reminger & Reminger Co. LPA*, 915 N.E.2d 696, 712 (Ohio Ct. App. 2009).

*Lasmer Indus.*, 741 F.Supp. at 838.[7] Accordingly, these claims are not time-barred.

### 3. *Statute of Limitations for Commercial Disparagement and Defamation Claims (Counts VI and VII)*

Plaintiffs concede that their commercial disparagement/trade libel and defamation claims are governed by Ohio's one-year statute of limitations. *See* Ohio Rev. Code § 2305.11. However, Plaintiffs allege that the scheme in the Complaint continues past August 2010, and is currently ongoing. Conversely, Defendant maintains that the Complaint is bare of any factual allegations of an ongoing scheme.

Plaintiffs' Complaint alleges that in a March 1-2, 2010 meeting and September 2010 conference call, Defendant's executives caused the company's representatives to wage a campaign of false and misleading statements to Plaintiffs' customers and potential customers and those statements extend into the period one year before Plaintiffs' complaint.[8] Given the facts of the instant case, this is not a scenario where false statements were actually printed in public form. Instead, the alleged misleading statements took place through private communication and thus required additional time for Plaintiffs to even become aware of the scheme. Therefore, the Court affords Plaintiffs some latitude in this respect, as is permitted pursuant to Ohio's liberal construction. Construing the facts in the Complaint in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs allege

---

[7] *See also Sommer*, 556 F. Supp. at 429, 434 (S.D. Ohio 1982) (applying Ohio's four-year statute of limitations to tortious interference claim based on "false and misleading statements").

[8] In fact, the Complaint was filed eleven months after the September 2010 conference call, during which Defendant's allegedly organized the scheme.

sufficient facts to maintain that the scheme included false and misleading statements, which extend into the period one year before the filing the Complaint. Accordingly, these claims are not time-barred.

    **B.    Scheme of Unfair Competition (Counts I-III)**

        *1.    Opinion Statements*

Next, Defendant argues that Plaintiffs' claims concern opinions that are protected under the Ohio Constitution and are not actionable as false statements under the Lanham Act, ODTPA, and common law unfair competition.

Whether a statement is opinion or fact depends on the totality of the circumstances. In making this determination, courts consider: (1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appears. *Scott v. The News-Herald*, 496 N.E.2d 699, 706 (Ohio 1986). Additionally, review of the context of a statement is necessary to determine whether the statement is fact or opinion. *Pizza Hut, Inc. v. Papa Johns Int'l, Inc.*, 227 F.3d 489, 495 n. 5 (5th Cir. 2000) ("When construing the allegedly false or misleading statement to determine if it is actionable under section 43(a), the statement must be viewed in the light of the overall context in which it appears.").

Plaintiffs have alleged a number of false statements. For example, Defendant accuse the founders of Veracity of "theft" and said that they had "stolen everything from Cooper-Atkins to create the VersaTrak system." (Doc. 1 at ¶¶ 22, 36). Plaintiffs also allege that Defendant told a prospective customer that Plaintiffs' VersaTrak system "had been pirated

from Cooper-Atkins and developed using Cooper-Atkins' trade secrets." (*Id.* at ¶ 30). These allegations are capable of verification, and are actionable under Ohio law. *See, e.g., McCartney v. Oblates of St. Francis DeSales*, 609 N.E.2d 216, 222 (Ohio Ct. App. 1992) (spoken words that "import an indictable criminal offense involving moral turpitude or infamous punishment" are considered slander *per se*).[9] Plaintiffs further allege that Defendant informed a third-party that it had obtained an injunction against a Veracity employee and that it had "pending litigation" against Veracity. (*Id.* at ¶¶ 37, 93). Plaintiffs allege a scheme of wrongful behavior that has occurred and continues to occur outside their presence, and therefore Plaintiffs cannot be expected to know the precise wording of every statement that has been made or the context in which each statement was made, nor does the law require that level of specificity at the pleading stage.[10] Here, the exact language that Defendant used in its scheme was not published in a newspaper, rather statements were made in internal meetings and privately to individual customers.

The Court concludes that Plaintiffs have alleged sufficient actionable false or misleading statements to state a cause of action.

### 2. *Commercial Advertising*

To be actionable, the false or misleading misrepresentation must involve

---

[9] *See also Stern v. Revco Drug Ctrs*, No. 44371, 1982 Ohio App. LEXIS 12315, at *8 (Ohio Ct. App. Oct. 28, 1982) ("An imputation that the plaintiff committed theft, or attempted to commit theft, is defamatory").

[10] Defendants may revisit this issue after discovery.

"commercial advertising or promotion."[11] *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Pediatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999). Defendant argues that its statements are not actionable because they were not widely disseminated and/or did not deceive a substantial segment of the intended audience. However, the required level of dissemination for a finding of "commercial advertising or promotion" will "undeniably vary from industry to industry and from case to case." *Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*, 820 F.Supp. 1072, 1078 (N.D. Ill. 1993). There is no evidence currently before this Court with respect to the "required level of dissemination" in the relevant industry. *See, e.g., Int'l Tech. Consultants v. Stewart*, No. 07-13391, 2008 U.S. Dist. LEXIS 72761, at *20-23 (E.D. Mich. Sept. 23, 2008) (considering size of market for the product at issue in determining that even a very small number of letters constituted commercial advertising or promotion).

Plaintiffs allege a broad scheme of unfair competition based on both information they already have, and information they expect to reveal in discovery. A campaign "designed to reach the public" or even a "well-enforced policy to disparage [a] competitor each time it is mentioned by a customer" can be actionable if enough customers in the

---

[11] District courts in this circuit routinely apply the *Gordon & Breach* test, under which a statement falls within the meaning of commercial "advertising or promotion" if it is: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's good or services. While the representations need not be made in a classical advertising campaign, but may consist instead of more informal types of promotion, the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry. *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535 (S.D.N.Y. 1994).

relevant market are reached. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57-58 (2d Cir. 2002). There is simply insufficient information at this stage of the litigation to determine whether there has been adequate dissemination of disparaging statements. Nonetheless, considering the facts in the light most favorable to Plaintiffs, allegations of dissemination have been made sufficient to state a claim. .

### C. Tortious Interference

"Under Ohio law, '[t]he tort of interference with a business relationship occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another.'" *Harris v. Bornhorst*, 513 F.3d 503, 523 (6th Cir. 2008). The elements of tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *McConnell v. Hunt Sports Enters.*, 725 N.E.2d 1193, 1216 (Ohio Ct. App. 1999).

The Complaint alleges that Defendant instructed its agents multiple times to use threats and false or misleading statements to thwart Veracity's business relationships. (*See, e.g.*, Compl. ¶¶ 26-28, 34).[12] The Complaint further alleges non-exhaustive examples

---

[12] Specifically, Defendant "developed a strategy intended to impede, impair, and damage Veracity . . . instruct[ing] its sale managers that they were to (i) inform customers that Veracity had "stolen Temp Track® software" and created VersaTrak® based on the trade secrets of Cooper-Atkins (despite Veracity's prior response to such allegations and Cooper-Atkins' lack of any factual support for such accusations); (ii) inform customers that Cooper-Atkins was

wherein Defendant's agents made such threats and statements to Plaintiffs' customers, potential customers, and a national distributor. (*See, e.g.*, *id.* ¶¶ 29-32, 35-37).[13]

Plaintiffs' Complaint clearly alleges that Veracity had economic relationships with customers and potential customers, that Defendant knew about those relationships, and that Defendant willfully and maliciously interfered with and thwarted those relationships

---

considering litigation against Veracity and that Veracity would soon be out of business; and (iii) warn customers to have no dealings with Veracity or suffer the consequences." (Doc. 1 at ¶ 27). Additionally, Plaintiffs maintain that "Cooper-Atkins instructed its sales managers to inform all existing customers that if the customer purchased hardware from Veracity and installed it onto their Temp Trak® system, Cooper-Atkins would void its warranties of the Temp Trak® system and no longer support the hardware or software purchased from Cooper-Atkins. If the customer inquired about the consequences of purchasing hardware from Veracity, management of Cooper-Atkins instructed its sales managers to advise the customer that if they purchased hardware from Veracity and used that hardware with the Temp Trak® system, Cooper-Atkins would (i) no longer support their Temp Trak® system; (ii) void all existing warranties of the Temp Trak® system; (iii) refuse to honor any pre-existing support contract for the Temp Trak® system; and (iv) rescind the customer's license for the Temp Trak® software." (*Id.* at ¶ 28). Plaintiffs also maintain that "Cooper-Atkins maliciously misrepresented to sales agents and independent sales representatives that Veracity was undercapitalized, understaffed and would not be in business for long. Veracity is informed and believes and thereon alleges that these sales agents and independent sales representatives of Cooper-Atkins subsequently repeated that same information to Veracity's customers and prospective customers with the intent to harm Veracity, to misrepresent the nature, characteristics and qualities of Veracity's goods and services, to libel Veracity and to interfere with Veracity's business relationships." (*Id.* at ¶ 34).

[13] For example, Plaintiffs allege that "in mid-June 2010, Philip Wertheiser, a vice-president of Cooper-Atkins, instructed employees of Cooper-Atkins to threaten a prospective Veracity customer, Memorial Health (Colorado), that if it purchased hardware from Veracity, Cooper-Atkins would void the warranties on its current Temp Trak® system. In spite of this threat, Memorial Health elected to purchase hardware from Veracity to support its wireless temperature monitoring system. After Memorial Health decided to purchase hardware from Veracity and install it with their Temp Trak® system, Cooper-Atkins directed its independent sales representative, Marcia Reynolds, to again threaten that if Memorial Health continued to purchase from Veracity, Cooper-Atkins would void the warranties and not support the Temp Trak® software at Memorial Health." (Doc. 1 at ¶ 29).

without privilege, causing damage to Veracity. (Doc. 1 at ¶¶ 63-64, 70-74).[14] Accordingly, Plaintiffs' Complaint pleads all the elements of tortious interference.

### D. Negligent Interference

Numerous Ohio state cases have wholly rejected a cause of action for negligent interference. Moreover, the Sixth Circuit has held that "Ohio law does not recognize the tort of negligent interference with a contractual relationship." *Crown Equip. Corp. v. Toyota Material Handling, USA, Inc.*, 20 2 Fed. Appx. 108, 112 n.2 (6th Cir. 2006).

Accordingly, Defendant's motion to dismiss the negligent interference claim (Count V) is hereby **GRANTED**.

### E. Commercial Disparagement/Trade Libel[15]

To prove a claim for commercial disparagement under the Lanham Act, a plaintiff must establish that: (1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff. *Herman Miller, Inc. v. Palazzetti Imps. & Emps., Inc.*, 270 F.3d 298, 323 (6th Cir. 2001).

---

[14] "As a direct and proximate result of Cooper-Atkins' improper conduct, Veracity has suffered damages and lost profits in an amount in excess of $250,000.00." (Doc. 1 at ¶ 73).

[15] The analysis of trade libel claims is similar to the analysis under the Lanham Act. *Jewel Cos. v. Westhall Co.*, 413 F.Supp. 994, 999 (N.D. Ohio), *aff'd*, 575 F.2d 1176 (6th Cir. 1978).

Defendant alleges that Plaintiffs' Complaint fails to plead that Defendant made a statement that disparages the quality of Veracity's product. However, the Complaint alleges that Defendant "maligned Veracity and its products and services," while it "knew these representations were false or acted in reckless disregard for the truth," and further alleges that Defendant's instructions to its agents led them to "misrepresent the nature, characteristics and qualities of Veracity's goods and services," among other things. (Doc. 1 at ¶¶ 81, 83). The Complaint also plainly alleges that "Cooper-Atkins has intentionally and maliciously disparaged Veracity's Versatrak(R) and VersaFridge(R) systems to Veracity's customers and potential customers." (*Id.* at ¶ 85). *See Fairfield Mach. Co., Inc. v. Aetna Cas. & Sur. Co.*, No. 2000-CO-14, 2001 Ohio App. LEXIS 5982, at *6 (Ohio App. Dec. 28, 2001) (explaining that a defamatory statement impugned a party's goods or services).

Accordingly, Plaintiffs have sufficiently plead a claim for commercial disparagement/trade libel.

### F. Breach of Contract

A breach of contract claim in Ohio has four elements: (1) the existence of a contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) the existence of damages. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (interpreting Ohio law).

Defendant argues that Plaintiffs Kennamer and Hauck have failed to state claims for breach of contract because the Complaint fails to identify any third party to whom Defendant made any "false misleading or negative" statements about Plaintiffs Kennamer

or Hauck.  However, Plaintiffs specifically allege that "Mike Carpenter and Carol Wallace have made false, misleading and negative statements about" them, "in particular, stating that [each] participated in the creation of the VersaTrak(R) system by stealing Cooper-Atkins' trade secrets and proprietary information."  (*Id.* at ¶¶ 99, 103).  Additionally, Plaintiffs include a discussion of Mike Carpenter's and Carol Wallace's false statements to Defendant's sales managers about Veracity stealing Defendant's software, with instructions to repeat those false statements.  (*Id.* at ¶ 27).[16]

Thus, Plaintiffs adequately plead their claims for breach of contract.

### IV.  CONCLUSION

Accordingly, based on the foregoing, Defendant's motion to dismiss (Doc. 10) is **GRANTED** with respect to Count V (negligent interference) and **DENIED** with respect to all remaining Counts.

**IT IS SO ORDERED.**

Date: __1/24/2012__

_____
Timothy S. Black
United States District Judge

---

[16] Specifically, Defendant sales managers were instructed to: "inform customers that Cooper-Atkins was considering litigation against Veracity and that Veracity would soon be out of business; and warn customers to have no dealings with Veracity or suffer the consequences." (Doc. 1 at ¶ 27).