IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **THE VERACITY GROUP, INC.,** *et al.* | : | |
| | : | **Case No. 1:11cv526** |
| **Plaintiffs,** | : | |
| | : | **Judge Timothy S. Black** |
| **v.** | : | **Magistrate Judge Stephanie K.** |
| | : | **Bowman** |
| **COOPER-ATKINS CORPORATION, INC.** | : | |
| | : | **COUNTERCLAIMS OF** |
| **Defendant.** | : | **DEFENDANT AND COUNTER-** |
| | : | **CLAIMANT COOPER-ATKINS** |
| | : | **CORPORATION** |
| | : | |
| | : | **<u>JURY DEMAND</u>** |

Pursuant to Fed. R. Civ. P. 13 and 15, Cooper-Atkins Corporation ("Cooper-Atkins")

amends its Answer to include these Counterclaims against The Veracity Group, Inc.

("Veracity"), Jack J. Kennamer ("Kennamer"), and Christopher F. Hauck ("Hauck").  Veracity,

Kennamer, and Hauck are collectively referred to as the "Counterclaim Defendants."  Cooper-

Atkins incorporates by reference its Answer including Affirmative Defenses to Plaintiffs'

Complaint (filed on February 7, 2012) in its entirety as if fully set forth herein.

**NATURE OF THE CASE**

1.      Cooper-Atkins and Veracity compete in the marketplace for customers using wireless

temperature monitoring systems.  However, the competitive strategies employed by Veracity go

beyond the bounds of the law.  The founders of Veracity, Kennamer and Hauck, are former

employees of Cooper-Atkins and ended their tenure at Cooper-Atkins on bad terms. Their malice

toward Cooper-Atkins is evident in their methods of unfairly competing with Cooper-Atkins and

other unlawful acts.

2.     Immediately after Kennamer and Hauck resigned from Cooper-Atkins, and, on information and belief, even before their departure, Veracity planned to unfairly compete with Cooper-Atkins through their company, Veracity, by systematically targeting Cooper-Atkins' customers and confusing Cooper-Atkins' customers and potential customers into believing that Veracity's wireless product "VersaTrak" was actually a new version of Cooper-Atkins' TEMP TRAK wireless products through a multi-faceted and unfair scheme.

3.     Counterclaim Defendants, as discussed further below, confused and continue to confuse customers in the marketplace into believing that VersaTrak and TempTrak are created by the same company and/or are affiliated product lines.  Counterclaim Defendants created and continue to create the impression that Cooper-Atkins' TEMP TRAK product line is obsolete with no replacement parts available and cannot comply with current regulations and requirements for certifications.  Veracity urged customers to "upgrade" its technology to Veracity's platform by misrepresenting its product as the only compliant and updated option for customers.  Veracity's statements to consumers are false and misleading, and Veracity's tactics are unfair and prohibited by law.  Counterclaim Defendants' unlawful acts also include, for example, trademark infringement by using the TEMP TRAK trademark to divert consumers to Veracity's website, and tortiously interfering with Cooper-Atkins' business relations and prospective business relations by unlawfully blocking Cooper-Atkins' access to a key supplier of WiFi technology for wireless temperature monitoring systems.

4.     So long as consumers are misled by the ongoing scheme adopted by Counterclaim Defendants, Cooper-Atkins will continue to be damaged by Counterclaim Defendants' false, misleading and deceptive statements and foreclosed from fairly competing in the marketplace. Accordingly, Cooper-Atkins is entitled to relief.

5. Specifically, Cooper-Atkins brings this action under 15 U.S.C. § 1125(a) and the Ohio Deceptive Trade Practices Act (R.C. §4165.02), and for violation of common law prohibitions against trademark infringement, dilution, unfair competition, tortious interference with contract and with prospective economic advantage, defamation, and disparagement/trade libel, all under the laws of Ohio or elsewhere. Cooper-Atkins seeks monetary damages and injunctive relief.

6. This is also an action against Kennamer and Hauck for breach of two settlement agreements entered into between Kennamer and Hauck and Cooper-Atkins.

### THE PARTIES

7. Cooper-Atkins is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business at 33 Reeds Gap Road, Middlefield, Connecticut 06455-0450.

8. Veracity is a corporation organized and existing under the laws of the State of Ohio with its principal place of business at 7575 E. Kemper Rd., Cincinnati, Ohio 45249.

9. Kennamer is a citizen of Ohio who resides in Maineville, Ohio.

10. Hauck is a citizen of Ohio who resides in Cincinnati, Ohio.

### JURISDICTION AND VENUE

11. By filing their Complaint, the Counterclaim Defendants have subjected themselves to the jurisdiction and venue of this Court for purposes of Cooper-Atkins' counterclaims.

12. The matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000.00).

13. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338.

14.     Supplemental jurisdiction is proper in this Court under 28 U.S.C. § 1367 over any and all state law claims, in that such claims are so related to Cooper-Atkins' federal question claims within the original jurisdiction of this Court that they form part of the same case or controversy.

15.     This Court retains jurisdiction over the enforcement of the settlement agreements between (i) Kennamer and Cooper-Atkins and (ii) Hauck and Cooper-Atkins, which arose out of prior litigation before this Court.

16.     Venue is proper in this Court under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this district, and the Counterclaim Defendants reside and/or conduct substantial business in this district.

## FACTUAL BACKGROUND

*The History Between the Parties*

17.     Since its establishment in 1885, Cooper-Atkins has grown to be a global leader and leading manufacturer of quality time, temperature, and humidity instruments.  In 1984, Cooper-Atkins entered the digital thermometer and temperature monitoring business.  As technologies continued to develop and advance, Cooper-Atkins began exploring opportunities in the wireless temperature monitoring market.

18.     Cooper-Atkins was exploring opportunities in the wireless temperature monitoring market, and in 2002, Cooper-Atkins purchased the assets of KTG Inc. ("KTG"), a developer of wireless systems for hot and cold temperature monitoring founded in the 1990s.  Kennamer was founder of KTG prior to Cooper-Atkins' purchase of KTG in 2002.  Hauck also was employed with KTG.

19.     When Cooper-Atkins purchased the assets of KTG, Cooper-Atkins hired Kennamer and Hauck as employees.  After the purchase of KTG, Cooper-Atkins launched a line of computer

hardware and computer software products for inventory management, namely, retrieving, transmitting and storing bar codes and temperature information for the food service industry under the trademark TEMP TRAK, and obtained, through its subsidiary, U.S. Trademark Registration No. 3,210,061.

20.     After the purchase of KTG's assets, Cooper-Atkins continued to develop its hardware and software wireless temperature monitoring platform.  The responsibilities of Kennamer and Hauck as employees of Cooper-Atkins included strategic planning for and development and marketing of Cooper-Atkins' wireless temperature monitoring products and services, particularly TEMP TRAK and particularly in connection with the Healthcare Business Unit.

21.     As part of their duties and responsibilities at Cooper-Atkins, Kennamer and Hauck were tasked with analyzing new technologies and recommending whether Cooper-Atkins should adopt new technologies for wireless temperature monitoring products and services.  For example, Cooper-Atkins' leadership tasked Kennamer and Hauck with exploring WiFi innovations to the TEMP TRAK products because Cooper-Atkins' competitors were developing WiFi wireless temperature monitoring products.  Kennamer and Hauck were expected to research and meet with manufacturers of WiFi hardware for wireless temperature monitoring systems and to recommend whether Cooper-Atkins should adopt and offer WiFi wireless temperature monitoring systems.  Kennamer and Hauck discouraged Cooper-Atkins' leadership from entering the WiFi wireless temperature monitoring market and advised Cooper-Atkins that the non-WiFi systems that Cooper-Atkins offered to consumers were sufficiently robust and adequate to meet demand.  Based on the advice from Kennamer and Hauck, Cooper-Atkins did not pursue WiFi product innovations while Kennamer and Hauck were employed with Cooper-Atkins.

22.     Kennamer and Hauck abruptly resigned their employment with Cooper-Atkins on the evening of July 10, 2009.

23.     Upon information and belief, Hauck and possibly Kennamer met with a representative or representatives of Point Six Wireless in Lexington, Kentucky in or about May 2009, two months before resigning from Cooper-Atkins.  Point Six Wireless is a manufacturer of WiFi hardware for temperature monitoring systems. Upon information and belief Hauck and/or Kennamer and the Point Six Wireless representative or representatives discussed WiFi transmitters that can be used in wireless temperature monitoring.

24.     Unbeknownst to Cooper-Atkins, Kennamer and Hauck were officers, directors or founders of The Veracity Group, Inc. before they resigned from Cooper-Atkins on July 10, 2009. Upon information and belief, The Veracity Group, Inc. was incorporated in the state of Ohio on November 13, 2006.  Upon information and belief, immediately after resigning from Cooper-Atkins and possibly before resigning from Cooper-Atkins, Kennamer and Hauck began their scheme to compete unfairly with Cooper-Atkins as Veracity, including offering WiFi products that Kennamer and Hauck had discouraged Cooper-Atkins from offering.

25.     Veracity, with Kennamer and Hauck at its head, began to compete with Cooper-Atkins by or before December 2009, and possibly as early as October 2009, when Veracity unveiled its wireless temperature monitoring software and hardware products and distribution network mere months after Kennamer and Hauck resigned from Cooper-Atkins.  Veracity's VersaTrak products bore the very same innovation – WiFi – that Kennamer and Hauck advised Cooper-Atkins not to adopt while they were employees at Cooper-Atkins.

6

***The Unlawful Point Six Wireless Agreement***

26.     One of the first unlawful acts the Counterclaim Defendants undertook after Kennamer

and Hauck resigned from Cooper-Atkins was to interfere with Cooper-Atkins' relationships with

and a key manufacturer and supplier of WiFi products and services.  Veracity has unlawfully and

unfairly interfered with Cooper-Atkins' prospective business relationship with Point Six

Wireless in Lexington, Kentucky ("Point Six"), a company that develops and manufactures

wireless temperature monitoring hardware, including WiFi hardware.

27.     Shortly after Kennamer and Hauck resigned from Cooper-Atkins, Veracity entered into

an unlawful memorandum of understanding with Point Six to intentionally and maliciously

prohibit Cooper-Atkins from obtaining WiFi hardware from Point Six.

28.     While Kennamer and Hauck were employed at Cooper-Atkins, Cooper-Atkins discussed

the potential purchase of WiFi products and services from manufacturers such as Point Six.

Counterclaim Defendants knew that Cooper-Atkins was interested in pursuing WiFi technology

and hardware from manufacturers, such as Point Six.  Hauck and/or Kennamer met with Point

Six in or about May 2009 while they were employees of Cooper-Atkins and while they knew

Cooper-Atkins was interested in pursuing and purchasing WiFi technology for its TEMP TRAK

wireless monitoring products and services.

29.     Kennamer and Hauck discouraged Cooper-Atkins from entering the WiFi market, but

then immediately entered the WiFi market on behalf of Veracity after resigning from Cooper-

Atkins and after entering into the agreement with Point Six prohibiting Point Six from selling

WiFi products to Cooper-Atkins.

30.     Point Six did, in fact, refuse to sell WiFi products to Cooper-Atkins.

31.     Counterclaim Defendants' unlawful agreement with Point Six was part of their scheme to harm Cooper-Atkins and is evidence of their malice towards Cooper-Atkins as a competitor and former employer of Veracity's employees and shareholders.  As a direct and proximate result of Counterclaim Defendants' actions in unlawfully interfering with Cooper-Atkins' prospective business relationship with Point Six, Cooper-Atkins suffered damages in that its entry into the WiFi market was delayed by many months, resulting in monetary damages and loss of customers and loss of goodwill in the market.

*Systematic Unfair and Deceptive Misrepresentations to Customers*

32.     The unlawful memorandum of understanding was only part of the strategy and scheme of Veracity, with Kennamer and Hauck at its head, to compete aggressively and unfairly with Cooper-Atkins and disrupt Cooper-Atkins' business relationships and prospective business relationships with its customers and prospective customers.  Indeed, Veracity's leadership urged its marketing representatives to "jam" Cooper-Atkins.  As discussed below, Veracity's "jamming" strategy – a systematic, ongoing marketing scheme created and demanded by Veracity's top leadership – goes beyond the bounds of the law.

33.     Veracity recruited Cooper-Atkins' employees and sales representatives – those who have intimate knowledge of Cooper-Atkins' marketing plans, product development, and, most importantly for Veracity, Cooper-Atkins' customers.  By way of example, Stu Small, an independent contractor distributor for Cooper-Atkins, terminated his distributor relationship with Cooper-Atkins on or about November 2009 to join Veracity, where, upon information and belief, he is employed as Vice President of Sales.  In July 2010, David Duran resigned his employment with Cooper-Atkins to join Veracity, where, upon information and belief, he is employed as Western Regional Vice President.  Immediately after resigning from Cooper-Atkins, both Duran

and Small began aggressively contacting Cooper-Atkins' customers using customer contact information obtained during their employment or association with Cooper-Atkins.

34.     Veracity's strategy to recruit Cooper-Atkins' employees and sales representatives is vital to Veracity's scheme of confusing Cooper-Atkins' customers because a foundational claim of Veracity's marketing collateral has been and continues to be that Veracity's VersaTrak-brand products are "developed by the creators of TempTrak." Indeed, Veracity promotes VersaTrak as follows: "From the creators and developers of the industry's first wireless temperature monitoring system, TempTrak, comes the Next Generation Wireless Monitoring System … VersaTrak." In fact, Veracity named its product VersaTrak Version 5.0 (even though, upon information in belief, in the marketplace there were no versions 1 through 4) knowing that TEMP TRAK's product line at the time was TEMP TRAK Version 4.3 (following various versions with lower numbers as is standard in software nomenclature). This intertwining of the TEMP TRAK trademark with "VersaTrak" in promotional material, coupled with hiring a key Cooper-Atkins former sales employee and a key former distributor, is designed to confuse customers into believing that "VersaTrak" is TEMP TRAK or that the two are related and created and owned by the same company or affiliated companies. This confusion is not merely hypothetical; rather, actual confusion is present in the marketplace.

35.     At the heart of Veracity's ongoing scheme is the goal of confusing consumers into believing that Veracity's products are new and refined versions of Cooper-Atkins' TEMP TRAK products, or that Cooper-Atkins' TEMP TRAK products are obsolete with no replacement parts available and cannot comply with current regulations and requirements for certifications. Veracity's employees, including a former Cooper-Atkins sales employee and a former Cooper-Atkins distributor, made and continue to make numerous false, misleading and deceptive

9

statements regarding Cooper-Atkins' products and services to achieve the goal of Veracity's scheme.

36.     Veracity's employees and/or agents have made false, misleading and deceptive statements to Cooper-Atkins' customers that they should discard their Cooper-Atkins wireless transmitters because Cooper-Atkins' transmitters do not comply with current regulations and requirements for certifications but that Veracity's products do comply. By way of example, Cooper-Atkins learned in November 2011 that Veracity employee David Duran told Cooper-Atkins' customer St. Joseph Hospital in Phoenix, Arizona to discard its TempTrak transmitters and purchase Veracity's products to comply with new regulations. That is simply false. Upon information and belief, as a direct and proximate result of Veracity's false, misleading and deceptive statements, St. Joseph Hospital unnecessarily purchased Veracity's products instead of Cooper-Atkins' products, resulting in damages to Cooper-Atkins.

37.     Veracity's employees and/or agents have made false, misleading and deceptive statements to Cooper-Atkins' customers that Cooper-Atkins' products cannot perform temperature monitoring certified by the National Institute of Standards and Technology ("NIST"), but that Veracity's products can perform such monitoring. By way of example, Cooper-Atkins learned on October 20, 2011 that Veracity employee David Duran told Cooper-Atkins' customer St. Joseph Hospital in Phoenix, Arizona that TEMP TRAK is incapable of NIST-certified temperature monitoring. Again, that is simply false. Long before October 2011, Cooper-Atkins provided  NIST-traceable products and NIST certifications of those products. Upon information and belief, Veracity's false, misleading and deceptive statements caused St. Joseph to unnecessarily purchase Veracity's products instead of Cooper-Atkins' products, resulting in damages to Cooper-Atkins.

38.     Veracity's employees and/or agents have made false, misleading and deceptive statements to Cooper-Atkins' customers that Cooper-Atkins refuses to invest funds to continually improve its software package but that Veracity makes such expenditures and improvements.  By way of example, Veracity employee Pete Savage told Cooper Atkins' customer Tenet Health on January 7, 2011 that "TempTrac [sic] was considered state of the art at the time but like so many company's [sic] on top they didn't want to invest the funds to continually improve its software package." That is simply false.  Cooper-Atkins has continuously invested in and made improvements to the TEMP TRAK software.

39.     Veracity's employees and/or agents have made false, misleading and deceptive statements to Cooper-Atkins' customers that Cooper-Atkins' equipment was becoming obsolete and that replacement parts for Cooper-Atkins' products would soon be commercially unavailable but that Veracity has continuity to its product service availability.  By way of example, in August 2012 Cooper-Atkins learned that Veracity employee Kennamer told Cooper-Atkins' customer Duke University Medical Center in North Carolina on September 10, 2010 that Duke's TEMP TRAK systems were "going to become obsolete in the upcoming months with no replacement parts available" and invited customers to purchase Veracity's products. That is simply false. Cooper-Atkins' TEMP TRAK system and products were not "going to become obsolete" in September 2010  and are not obsolete now, and replacement parts are available now.  Upon information and belief, Veracity's false, misleading and deceptive statements caused Duke University Medical Center to unnecessarily purchase Veracity products, resulting in damages to Cooper-Atkins.

40.     Veracity's employees and/or agents have made false, misleading and deceptive statements to Cooper-Atkins' customers leading them to believe that Cooper-Atkins' TEMP

TRAK products go under a new name: VersaTrak, which is the name of Veracity's wireless temperature monitoring product. By way of example, on or about January 20, 2010, Veracity employee Stu Small led Cooper-Atkins' customer CAMC Teays Valley Hospital in West Virginia to believe that Cooper-Atkins' TEMP TRAK product had a new name - VersaTrak. The customer was confused and was left with the impression that Stu Small was still the customer's Cooper-Atkins representative.

41.     In promotional material which, upon information and belief, Veracity has distributed and continues to distribute in interstate commerce and in international markets, Veracity makes the false, misleading and deceptive statement that Cooper-Atkins' TEMP TRAK system "requires on site engineer visit to validate each transmitters' calibration accuracy EVERY YEAR." This statement is false. An onsite visit is not required every year to calibrate the transmitters. In fact, and as Counterclaim Defendants are aware, the TEMP TRAK system is designed to allow customers to perform the calibration themselves, if desired, and on whatever schedule the customer desires.

42.     All of the statements made by Veracity's employees and/or agents were made as part of their duties with Veracity. Veracity's leadership, namely Kennamer and Hauck, encouraged and condoned these actions as part of Counterclaim Defendants' ongoing scheme and systematic offensive to damage Cooper-Atkins via unfair competition and other unlawful means. Upon information and belief, Veracity and its employees and agents continue to make similar and other false, misleading and deceptive statements to Cooper-Atkins' customers to this day.

43.     Upon information and belief, Veracity's scheme of making false, misleading, and tortious statements to Cooper-Atkins' customers and potential customers, represented by the examples provided above, is ongoing.

44.     As a direct and proximate result of Veracity's malicious strategy and scheme intended to mislead and deceive Cooper-Atkins' customers and to disparage and defame Cooper-Atkins and its goods and services, Cooper-Atkins has lost business and incurred monetary damages.

*Website Deception*

45.     Veracity's scheme does not end at making false, misleading and deceptive statements to customers or its unlawful interference with Cooper-Atkins' ability to do business with a key manufacturer and supplier of WiFi products. Veracity has engaged in trademark infringement and passing off to confuse consumers regarding the relationship between Veracity (and its products and services) and Cooper-Atkins (and its products and services). For example, Veracity, through its employee Stu Small, until very recently operated a website bearing Cooper-Atkins' TEMP TRAK trademark and drawings of Cooper-Atkins' TEMP TRAK products, and the website ultimately linked customers and potential customers to Veracity's flagship website.

46.     Upon information and belief, Stu Small, as part of his responsibilities as Vice President of Sales at Veracity, maintains control over digital advertising, including control over a website with the URL gotopmg.com, including the subdomain gotopmgcom/temptrak.htm (the "Site"). Until very recently, the Site appeared high in search engine rankings for the search "TEMPTRAK."

47.     The Site appeared to be an advertisement for Cooper-Atkins' wireless temperature monitoring products and services. The Site used Cooper-Atkins' registered trademark TEMP TRAK and explained the various features of Cooper-Atkins' wireless products, displayed drawings of Cooper-Atkins' TEMP TRAK products, and explained how the TEMP TRAK system works. Accordingly, consumers who were searching for legitimate TEMP TRAK products were led to believe that they had reached a legitimate and bona fide site that discussed,

promoted and offered the TEMP TRAK line of products.  However, nothing could be further

from the truth.  When a user of the Site clicked on the word "Home," the user was directed

through a hyperlink to the Veracity website homepage, which advertised, promoted, and offered

Veracity's competitive products and services under the mark VERSATRAK.  In the totality of

Veracity's scheme of deception, Veracity's use of a similar mark to that of Cooper-Atkins only

adds to a consumers' confusion, deceiving them into believing that they have somehow reached

another line of Cooper-Atkins' products.  None of the activities on the Site were permitted or

approved by Cooper-Atkins.

48.     Upon information and belief, Veracity employee Stu Small linked the Site to Veracity's

website homepage.  Stu Small created this link with the intention of diverting consumers who

were interested in Cooper-Atkins' products and services to Veracity's website for the purposes

of selling Veracity's products and services.  Stu Small's operation of the Site is within the scope

of his duties as an employee of Veracity.

***Veracity's Liability***

49.     At all material times, Veracity was in a position of authority, control, and supervision

over the actions of its employees and agents described above.

50.     All of the acts described above were committed either by Veracity or by Veracity's

employees, agents, or other persons acting within the scope of their partnership, agency, joint

venture, employer-employee, and/or master-servant relationships with Veracity.

51.     As such, Veracity is directly liable for its own actions, vicariously liable for the actions of

its agents, employees, and servants, and jointly and severally liable for the actions of its partners

and joint venturers.

**COUNT I**
**UNFAIR COMPETITION AND FALSE ADVERTISING**
**UNDER § 43(a) OF THE LANHAM ACT (15 U.S.C. §1125(a))**

52.     Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 51 as though set out fully herein.

53.     Veracity has engaged in a deliberate and malicious sales campaign to compete unfairly with Veracity.  As part of Veracity's malicious scheme, Veracity's officers, directors, employees and agents have made false, misleading and deceptive statements of fact in commercial advertising and promotions in interstate commerce which misrepresent the nature, characteristics and qualities of Cooper-Atkins' goods and services, and which misrepresent that Cooper-Atkins endorses or is affiliated with Veracity's goods and services.  Veracity's false, misleading and deceptive statements include but are not limited to statements that Veracity's products are a new version of Cooper-Atkins' products and that TEMP TRAK products have a new name – VersaTrak; that Cooper-Atkins' TEMP TRAK products are obsolete with no replacement parts available; that Cooper-Atkins' TEMP TRAK products cannot comply with current regulations and requirements for certifications; that Cooper-Atkins did not invest money in continually improving its software package; and that TEMP TRAK requires an on site engineer visit to validate each transmitters' calibration accuracy every year.  Veracity's actions constitute unfair competition and false advertising, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.     Because Veracity is knowingly and intentionally making false, misleading, and deceptive statements regarding Cooper-Atkins and its products and services all for Veracity's profit and gain, Veracity's acts of unfair competition are willful.

55.     Veracity's false, misleading, and deceptive statements to Cooper-Atkins customers or potential customers are material.

56.     Cooper-Atkins believes that it is or is likely to be damaged by such acts.

57.     Veracity's actions, as described above, have caused and are likely to cause further irreparable injury to Cooper-Atkins' business and reputation.  The injury to Cooper-Atkins is ongoing and irreparable.  An award of monetary damages alone cannot fully compensate Cooper-Atkins for its injuries, and Cooper-Atkins lacks an adequate remedy at law.

58.     Veracity's actions, if not enjoined, will continue.

59.     As a direct and proximate result of Veracity's unfair competition and false advertising, Cooper-Atkins has incurred and is incurring damages in amounts to be proved at trial.

60.     The foregoing acts of Veracity have been and continue to be deliberate, willful, and wanton, making this an exceptional case and entitling Cooper-Atkins to attorney's fees and damages in an amount three times greater than actual damages pursuant to the Lanham Act, 15 U.S.C. § 1117.

61.     Cooper-Atkins is entitled to a permanent injunction against Veracity, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of Veracity's profits, costs, and attorneys' fees.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN AND PASSING OFF**
**UNDER LANHAM ACT § 43(a) (15 U.S.C. §1125(a))**

62.     Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 61 as though set out fully herein.

63.     Cooper-Atkins owns and/or uses in interstate commerce the trademarks COOPER ATKINS, TEMP TRAK, and TEMPTRAK and all of the goodwill built up in those marks and the goods and services provided under the marks.

64.     Because of Veracity's unauthorized use of Cooper-Atkins' marks and drawings of Cooper-Atkins' products on the Site and in interstate commerce, consumers are deceptively led to believe that Veracity's products originate with or are sponsored or otherwise approved by Cooper-Atkins, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65.     Because of Veracity's false, misleading and deceptive statements to consumers designed to create the impression that Veracity's products are authorized newer versions of Cooper-Atkins' products, consumers are deceptively led to believe that Veracity's products originate with or are sponsored or otherwise approved by Cooper-Atkins, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66.     Veracity's false, misleading, and deceptive statements to Cooper-Atkins' customers or potential customers are material.

67.     Veracity's actions have deprived Cooper-Atkins of its rights to control the usage and goodwill relating to its trademarks and its business reputation among consumers.

68.     The foregoing acts and conduct by Veracity constitute false designation of origin and passing off in connection with products distributed in interstate commerce, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69.     Cooper-Atkins believes that it is or is likely to be damaged by such acts.

70.     Veracity's acts, as set forth above, have caused and are likely to cause further irreparable injury to Cooper-Atkins' business and reputation.  The injury to Cooper-Atkins is ongoing and irreparable.  An award of monetary damages alone cannot fully compensate Cooper-Atkins for its injuries, and Cooper-Atkins lacks an adequate remedy at law.

71.     Veracity's actions, if not enjoined, will continue.

72.     As a direct and proximate result of Veracity's unlawful acts, Cooper-Atkins has incurred and is incurring damages in amounts to be proved at trial.

73.     The foregoing acts of Veracity have been and continue to be deliberate, willful, and wanton, making this an exceptional case and entitling Cooper-Atkins to attorney's fees and damages in an amount three times greater than actual damages pursuant to the Lanham Act, 15 U.S.C. § 1117.

74.     Cooper-Atkins is entitled to a permanent injunction against Veracity, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of Veracity's profits, costs, and attorneys' fees.

### COUNT III
### FEDERAL TRADEMARK INFRINGEMENT (§ 43) (15 U.S.C. §1125(a))

75.     Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 74 as though set out fully herein.

76.     Cooper-Atkins believes that it is or is likely to be damaged by Veracity's wrongful and unauthorized use of Cooper-Atkins' trademarks in commerce and interstate commerce.

77.     Veracity's wrongful use of Cooper-Atkins' trademarks, in a scheme to deceive consumers and lure them away from legitimate Cooper-Atkins TEMP TRAK products and services, constitutes an infringement of Cooper-Atkins' rights in its marks and is likely to cause confusion, mistake and deception of the public as to the affiliation, connection, or association with Cooper-Atkins and its products and services.

78.     Veracity's false, misleading, and deceptive statements to Cooper-Atkins customers or potential customers are material.  Veracity's actions as set forth above, including use of a similar mark to that of the TEMP TRAK mark, namely VERSATRAK, constitute in their totality a

scheme of deception and constitute an infringement of Cooper-Atkins' rights in its marks and are likely to cause confusion, mistake and deception of the public.

79.    As a direct and proximate result of Veracity's actions, Cooper-Atkins has suffered and will continue to suffer great damage to its business, goodwill, reputation, profits, strength, interest, and value of Cooper-Atkins's trademarks.

80.    Veracity's actions thwart Cooper-Atkins' ability to control the quality of the goods bearing Cooper-Atkins' trademarks, and its goodwill associated with Cooper-Atkins' trademarks and reputation.

81.    Veracity's actions, as set forth above, have caused and are likely to cause further irreparable injury to Cooper-Atkins' business and reputation.  The injury to Cooper-Atkins is ongoing and irreparable.  An award of monetary damages alone cannot fully compensate Cooper-Atkins for its injuries, and Cooper-Atkins lacks an adequate remedy at law.

82.    Veracity's actions, if not enjoined, will continue.

83.    The foregoing acts of Veracity have been and continue to be deliberate, willful, and wanton, making this an exceptional case and entitling Cooper-Atkins to attorney's fees and damages in an amount three times greater than actual damages pursuant to the Lanham Act, 15 U.S.C. § 1117.

84.    Cooper-Atkins is entitled to a permanent injunction against Veracity, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of Veracity's profits, costs, and attorneys' fees.

**COUNT IV**
**DECEPTIVE TRADE PRACTICES (Ohio Revised Code § 4165.02 *et seq.*)**

85.    Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 84 as though set out fully herein.

86.     For the same reasons that they violate Section 43 of the Lanham Act and because they constitute disparagement, Veracity's false, misleading and deceptive statements to Cooper-Atkins' customers and prospective customers and deceptive business practices described above violate Ohio's Deceptive Trade Practices Act, R.C. § 4165.02, *et seq*.

87.     As described above, Veracity's false, misleading, and deceptive statements to Cooper-Atkins customers or potential customers are material.

88.     Veracity's conduct is and has been deliberate, intentional, willful, and malicious, and Veracity has acted with full knowledge of the deceptiveness of its actions.

89.     Cooper-Atkins has been injured as a result of Veracity's unlawful and unauthorized deceptive trade practices by lost sales, lost and damaged business relationships, and lessening of the goodwill that Cooper-Atkins' products and services have with its customers and prospective customers. Further, Veracity's wrongful practices have actually deceived and have a tendency to deceive the customers and potential customers and have influenced purchasing decisions.

90.     As a direct and proximate result of Veracity's unlawful and unauthorized deceptive trade practices, Veracity has caused and will continue to cause substantial and irreparable harm to Cooper-Atkins. Unless enjoined, Veracity will continue to act in the unlawful manner complained of above and cause further irreparable harm to Cooper-Atkins.

91.     The injury to Cooper-Atkins is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate Cooper-Atkins for its injuries, and Cooper-Atkins lacks an adequate remedy at law.

92.     Cooper-Atkins is entitled to a permanent injunction against Veracity, as well as all other remedies available under the Ohio's Deceptive Trade Practices Act, including, but not limited to, compensatory and punitive damages in an amount to be proven at trial and attorneys' fees.

**COUNT V**
**COMMON LAW TRADEMARK INFRINGEMENT**

93.     Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 92 as though set out fully herein.

94.     Veracity's actions described above and specifically, without limitation, the unauthorized use of Cooper-Atkins' trademarks and Veracity's false, misleading and deceptive statements to Cooper-Atkins' customers regarding an alleged relationship between Veracity (and/or its products and services) and Cooper-Atkins (and/or its products and services) infringes Cooper-Atkins' rights in its trademarks, in violation of the common law of the State of Ohio and elsewhere.

95.     Veracity's infringement of Cooper-Atkins' trademarks has caused and continues to cause irreparable injury to the value and goodwill of such marks, as well as to Cooper-Atkins' related business, goodwill, and reputation.  Veracity's actions, if not enjoined, will continue.  Cooper-Atkins has no adequate remedy at law and the amount of its damages is difficult to ascertain with specificity.

96.     As a direct and proximate result of Veracity's infringement of Cooper-Atkins' trademarks, Cooper-Atkins has incurred and continues to incur damages in amounts to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with its trademarks.

97.     Cooper-Atkins is entitled to a permanent injunction against Veracity, as well as all other remedies available, including, but not limited to, compensatory and punitive damages in an amount to be proven at trial and attorneys' fees.

## COUNT VI
## COMMON LAW DILUTION

98.     Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 97 as though set out fully herein.

99.     Veracity's improper and unauthorized use of the distinctive marks of Cooper-Atkins without authorization or consent has caused and will cause dilution of the distinctive character of Cooper-Atkins' marks by damaging the positive associations attached to Cooper-Atkins' marks in violation of the common law of the state of Ohio.

100.    On information and belief, Veracity's acts of infringement have been willful with the intent to trade on the reputation of Cooper-Atkins and to cause dilution of Cooper-Atkins' distinctive marks.

101.    Veracity's dilution of Cooper-Atkins' marks has caused and continues to cause irreparable injury to the value and goodwill of such marks, as well as to Cooper-Atkins' related business, goodwill, and reputation.  Veracity's actions, if not enjoined, will continue.  Cooper-Atkins has no adequate remedy at law and the amount of its damages is difficult to ascertain with specificity.

102.    As a direct and proximate result of Veracity's dilution of Cooper-Atkins' marks, Cooper-Atkins has incurred and continues to incur damages in the amounts to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with its marks.

103.    Cooper-Atkins is entitled to a permanent injunction against Veracity, as well as all other remedies available, including, but not limited to, compensatory and punitive damages in an amount to be proven at trial and attorneys' fees.

22

**COUNT VII**
**COMMON LAW UNFAIR COMPETITION**

104.    Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 103 as though set out fully herein.

105.    Veracity's actions, as described above, constitute unfair competition in violation of the common law of Ohio and elsewhere.  Without limitation, Veracity's aforesaid acts include the circulation of untrue information and the publication of statements designed to harm the business of Cooper-Atkins.

106.    Veracity's conduct and activities are and have been deliberate, intentional, willful, malicious, and have been undertaken with the purpose of deceiving Cooper-Atkins' customers and potential customers.  Veracity has acted with full knowledge of the deceptiveness of its actions.

107.    Veracity's false and misleading statements about TEMP TRAK are likely to cause confusion, mistake, or deception about the quality and features and origins of the TEMP TRAK products.

108.    Cooper-Atkins has been injured as a result of Veracity's unfair competition by lost sales, lost and damaged business relationships, and lessening of the goodwill that Cooper-Atkins' products and services have with its customers, prospective customers, and in the market generally.

109.    As a direct and proximate result of Veracity's acts of unfair competition, Veracity has caused and will continue to cause substantial and irreparable harm to Cooper-Atkins.  Unless enjoined, Veracity will continue to act in the unlawful manner complained of above and cause further irreparable harm to Cooper-Atkins.

110. The injury to Cooper-Atkins is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate Cooper-Atkins for its injuries, and Cooper-Atkins lacks an adequate remedy at law.

111. Cooper-Atkins is entitled to a permanent injunction against Veracity, as well as all damages adequate to compensate it for Veracity's acts of unfair competition, including, but not limited to, compensatory and punitive damages in an amount to be proven at trial and attorneys' fees.

**COUNT VIII**
**TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ADVANTAGE**
**(AS TO CUSTOMERS)**

112. Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 111 as though set out fully herein.

113. Veracity knows or has reason to know that businesses such as Cooper-Atkins rely on their reputation and goodwill to maintain business credibility and customer interactions.

114. Veracity knows or has reason to know that Cooper-Atkins has or had economic relationships with the customers described above, with both actual economic benefit and the probability of future economic benefit to Cooper-Atkins.

115. Veracity knew of the relationships that Cooper-Atkins has or had with its customers and prospective customers.

116. Upon information and belief, on numerous occasions, throughout the country and as described above, Veracity has tortiously interfered with contracts and prospective contractual relationships between Cooper-Atkins and its customers and potential customers.

117. Upon information and belief, Veracity has, itself or through its agents, communicated false, misleading, and deceptive statements about Cooper-Atkins to Cooper-Atkins' customers

and prospective customers to intentionally interfere with Cooper-Atkins' existing and prospective business relationships.

118.    Through its false, misleading and deceptive statements to Cooper-Atkins' customers and prospective customers, Veracity has interfered with Cooper-Atkins' existing and prospective contractual and business relationships.

119.    Veracity's actions in intentionally and tortiously interfering with Cooper-Atkins' existing and prospective business relationships are without privilege or justification.

120.    Veracity acted with malice, with knowledge that the statements it made to Cooper-Atkins' customers or prospective customers was false, misleading and deceptive, or with reckless disregard as to the truth or falsity of the statements it made to Cooper-Atkins' customers or prospective customers.

121.    Upon information and belief, Veracity's unlawful actions are ongoing.

122.    As a direct and proximate result of Veracity's improper conduct, Cooper-Atkins has suffered damages and lost profits, and has suffered and will continue to suffer immediate and irreparable injury and damage through the loss and continued loss of revenue, customers, and goodwill.  Veracity's actions, if not enjoined, will continue.

123.    Cooper-Atkins is entitled to a permanent injunction against Veracity, as well as all other remedies, including, but not limited to, compensatory and punitive damages in an amount to be proven at trial and attorneys' fees.

**COUNT IX**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE**
**(AS TO POINT SIX)**

124.    Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 123 as though set out fully herein.

125.    Veracity knows or has reason to know that Cooper-Atkins was pursuing and exploring a potential business relationship with a manufacturer of WiFi wireless temperature monitoring products, such as Point Six.

126.    Upon information and belief, Veracity has tortiously interfered with the potential contractual relationship between Cooper-Atkins and Point Six.

127.    Upon information and belief, Veracity with malice toward Cooper-Atkins entered an agreement with Point Six to intentionally interfere with Cooper-Atkins' prospective business relationship with Point Six by restricting Point Six from supplying products, including WiFi products, to Cooper-Atkins.

128.    By entering this agreement with Point Six with the malicious intent of harming Cooper-Atkins, Veracity has interfered with Cooper-Atkins's prospective contractual and business relationships with Point Six.

129.    Veracity's actions in intentionally and tortiously interfering with Cooper-Atkins' prospective business relationship with Point Six were without privilege or justification.

130.    As a direct and proximate result of Veracity's improper conduct, Cooper-Atkins has suffered damages and lost profits, loss of revenue, customers and goodwill.

131.    Cooper-Atkins is entitled to all appropriate remedies, including, but not limited to, compensatory and punitive damages in an amount to be proven at trial and attorneys' fees.

## COUNT X
## DEFAMATION

132.    Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 131 as though set out fully herein.

133.    As described above, Veracity published and continues to publish orally and in writing to Cooper-Atkins' customers and prospective customers false statements of fact about Cooper-

Atkins negligently, with knowledge of their falsity and/or with reckless disregard as to their truth or falsity.

134.    Veracity's false statements of fact directly reference and falsely denigrate Cooper-Atkins.

135.    Veracity's acts are without privilege or justification.

136.    Veracity's false statements are defamatory and have caused, and continue to cause, harm and damage to the reputation and good name of Cooper-Atkins.

137.    As a result of Veracity's false statements to Cooper-Atkins' customers and prospective customers, Veracity has caused and will continue to cause substantial and irreparable harm to Cooper-Atkins, for which there is no adequate remedy at law.  Veracity's actions, if not enjoined, will continue.  Veracity has unjustifiably benefited from said unlawful acts and will continue to carry out such unlawful conduct and be unjustly enriched unless enjoined by this Court.

138.    Veracity's publications of false statements about Cooper-Atkins have caused, and continue to cause, damages to Cooper-Atkins in an amount to be determined in trial.

139.    As a direct and proximate result of Veracity's false and defamatory statements to Cooper-Atkins' customers and potential customers, Cooper-Atkins has suffered damages and lost profits, loss of revenue, customers and goodwill.

140.    Cooper-Atkins is entitled to a permanent injunction against Veracity, as well as all other remedies, including, but not limited to, compensatory and punitive damages in an amount to be proven at trial and attorneys' fees.

### COUNT XI
### DISPARAGEMENT/TRADE LIBEL

141.    As described above, Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 140 as though set out fully herein.

27

142.    Veracity published and continues to publish orally and in writing to Cooper-Atkins'

customers and prospective customers false and derogatory statements of fact about Cooper-

Atkins and its products and services negligently, with knowledge of their falsity and/or with

reckless disregard as to their truth or falsity.

143.    The statements made by Veracity were made for the purpose of publicly disparaging and

demeaning the quality, integrity and/or value of Cooper-Atkins' products, services, and the

reputation of Cooper-Atkins and its products and services

144.    Veracity's acts were without privilege or justification.

145.    Veracity's intentional activities constitute acts of disparagement and trade libel under the

statutory and common law of the State of Ohio.

146.    Upon information and belief, Veracity's acts of disparagement and trade libel have been

willful.

147.    Veracity's false statements have caused, and continue to cause, harm and disparagement

to the reputation and good name of Cooper-Atkins and its products and services.

148.    As a direct and proximate result of Veracity's disparagement and trade libel, Veracity has

caused and will continue to cause substantial and irreparable harm to Cooper-Atkins, for which

there is no adequate remedy at law. Veracity has unjustifiably benefited from said unlawful acts

and will continue to carry out such unlawful conduct and be unjustly enriched unless enjoined by

this Court.

149.    Veracity's publications of false statements have caused, and continue to cause, damages

to Cooper-Atkins in an amount to be determined in trial.

150.    Cooper-Atkins is entitled to a permanent injunction against Veracity, as well as all other available remedies, including, but not limited to, compensatory and punitive damages in an amount to be proven at trial, and attorneys' fees.

**COUNT XII**
**BREACH OF SETTLEMENT AGREEMENT (KENNAMER)**

151.    Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 150 as though set out fully herein.

152.    Cooper-Atkins and Kennamer entered into a Confidential Settlement Agreement and General Release on August 31, 2009.  A copy is not attached to this Counterclaim because the settlement agreement is confidential and Kennamer has a copy of it.

153.    In the agreement, Kennamer expressly agreed that he would not "at any time disparage Cooper-Atkins or Releasees in any manner likely to be harmful to them or their business, business reputation or personal reputation . . ." Releasees are defined in the agreements as Cooper-Atkins' "parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, shareholders, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries . . ."

154.    Kennamer has breached the agreement because he has made statements, as described above, that disparage Cooper-Atkins and Releasees, and his statements are likely to be harmful to Cooper-Atkins and Releasees or their business, business reputation or personal reputation.  As a direct and proximate result of Kennamer's disparagement of Cooper-Atkins and Releasees, Kennamer has caused and will continue to cause substantial and irreparable harm to Cooper-Atkins, for which there is no adequate remedy at law.  Kennamer's actions, if not enjoined, will continue.

155.    Kennamer's statements have directly and proximately caused Cooper-Atkins to be damaged in an amount to be proven at trial. Cooper-Atkins is entitled to a permanent injunction against Kennamer, as well as all other available remedies.

**COUNT XIII**
**BREACH OF SETTLEMENT AGREEMENT (HAUCK)**

156.    Cooper-Atkins incorporates by reference the allegations set forth in paragraphs 1 through 155 as though set out fully herein.

157.    Cooper-Atkins and Hauck entered into a Confidential Settlement Agreement and General Release on August 31, 2009. A copy is not attached to this Counterclaim because the settlement agreement is confidential and Hauck has a copy of it.

158.    In the agreement, Hauck expressly agreed that he would not "at any time disparage Cooper-Atkins or Releasees in any manner likely to be harmful to them or their business, business reputation or personal reputation . . ." Releasees are defined in the agreements as Cooper-Atkins's "parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, shareholders, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries . . ."

159.    Hauck has breached the agreement because, as described above, he or his agents have made statements that disparage Cooper-Atkins and Releasees, and the statements are likely to be harmful to Cooper-Atkins and Releasees or their business, business reputation or personal reputation.  As a direct and proximate result of Hauck's disparagement of Cooper-Atkins and Releasees, Hauck has caused and will continue to cause substantial and irreparable harm to Cooper-Atkins, for which there is no adequate remedy at law.  Hauck's actions, if not enjoined, will continue.

160.    Hauck's statements have directly and proximately caused Cooper-Atkins to be damaged in an amount to be proven at trial. Cooper-Atkins is entitled to a permanent injunction against Hauck, as well as all other available remedies.

## PRAYER

WHEREFORE, Cooper-Atkins requests a judgment entry as follows:

A.    Finding that Counterclaim Defendants' acts complained of herein:

1.  Constitute false advertising and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

2.  Constitute false designation of origin and passing off in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

3.  Constitute trademark infringement in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

4.  Constitute deceptive trade practices under O.R.C. § 4165.02 *et seq.*;

5.  Constitute common law trademark infringement, dilution, unfair competition, and tortious interference with contract and prospective advantage;

6.  Defame, slander, disparage, and libel Cooper-Atkins and its products and services;

7.  Constitute a breach of Kennamer's settlement agreement with Cooper-Atkins; and

8.  Constitute a breach of Hauck's settlement agreement with Cooper-Atkins.

B.    Permanently enjoining and restraining Veracity, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice thereof by personal service from the actions complained of herein, including, but not limited to:

1.  Disseminating false and misleading information about Cooper-Atkins and its products and services;

2.  Using or distributing any marketing or promotional materials that contain false and misleading information about Cooper-Atkins or its products;

3.  Disseminating false and misleading information about Veracity's products and services, including describing Veracity's products as related, endorsed, licensed, or in any way affiliated with Cooper-Atkins;

4.  Using Cooper-Atkins' trademarks, including, without limitation, COOPER ATKINS, TEMP TRAK, TEMPTRAK, or any variation thereof in connection with any of Veracity's products or services and in any marketing or promotional materials, including, without limitation, the codes and metatags on websites under control of Veracity, or its officers, agents, servants, and employees.

C.      Determining and awarding Cooper-Atkins its damages resulting from the acts complained of herein, including interest, costs, compensatory damages, punitive damages, and attorneys' fees;

D.      Requiring the Counterclaim Defendants to deliver for destruction all labels, forms, signs, prints, packages, wrappers, brochures, advertisements, and marketing materials containing the false representations complained of herein;

E.      Requiring the Counterclaim Defendants to issue corrective advertising designed to remedy the harm done by Counterclaim Defendants' acts;

E.      Finding that Counterclaim Defendants' acts constitute an exceptional case under 15 U.S.C. §1117 and awarding Cooper-Atkins its reasonable attorneys' fees.

F.      Requiring Counterclaim Defendants to:

1. Pay Cooper-Atkins in accordance with 15 U.S.C. §1117(a), three times the amount of damages it has incurred by reason of the Counterclaim Defendants' acts complained of herein.

2. Account for and pay to Cooper-Atkins the profits derived by the Counterclaim Defendants from their acts complained of herein, increased as the Court finds just in accordance with the circumstances of this case.

G. Providing Cooper-Atkins with such other and further relief as this Court deems just and equitable.

**JURY DEMAND**

Cooper-Atkins hereby demands a trial by jury for all issues in this action triable of right by jury.

Respectfully submitted,

*/s/ Monica L. Dias*
Monica L. Dias (0073617)
Susan Grogan Faller (0017777)
Jill P. Meyer (0066326)
Austin D. Padgett (0085368)
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
513.651.6800
513.651.6981 (Facsimile)
mdias@fbtlaw.com
sfaller@fbtlaw.com
jmeyer@fbtlaw.com
apadgett@fbtlaw.com
*Trial Attorneys for Defendant*
*Cooper-Atkins Corporation*

## CERTIFICATE OF SERVICE

I hereby certify on the 10th day of December 2012, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties electronically by operation of the Court's electronic filing system.

*/s/ Monica L. Dias*_____

CINLibrary 0122947.0589029  2612324v2